367 So.2d 796 (1979)
Succession of Bee Owen THOMPSON, widow of Frank J. Salvatore.
No. 62932.
Supreme Court of Louisiana.
January 29, 1979.
*797 Joseph S. Casey, Casey, Babin & Casey, New Orleans, for Robert B. Thompson.
Ross P. LaDart, William L. Dehner, Harvey, for Joel Salvatore wife of Edgar Eli Smith, Jr.
DIXON, Justice.[*]
In this decision we determine whether the state may constitutionally prohibit an acknowledged illegitimate child from receiving a legacy from his mother if she has other legitimate children. C.C. 1483.
Bee Owen Thompson, the widow of Frank J. Salvatore, died October 2, 1976 in Orleans Parish. By olographic testament she left all her property to her two children, Joel Salvatore Smith, her legitimate daughter, and Robert Thompson, an acknowledged natural child. Joel Smith thereafter brought suit in the Civil District Court for Orleans Parish to have Robert Thompson declared incapable of receiving the legacy on the basis of Article 1483 of the Civil Code:
"Natural children or acknowledged illegitimate children can not receive from their natural parents, by donations inter vivos or mortis causa beyond what is strictly necessary to procure them sustenance, or an occupation or profession which may maintain them, whenever the father or the mother who has thus disposed in their favor, leaves legitimate children or descendants.
Those donations shall be reducible in cases of excess, according to the rules laid down under the title: Of Father and Child."
In a judgment entered on July 15, 1978, the district court dismissed the plaintiff's petition and in effect declared Article 1483 to violate the Louisiana Constitution of 1974. Under Article 5, § 5(D)(1) of the 1974 Constitution, such a judgment is appealable directly to this court.
On appeal the defendant argues that Article 1483 violates Article 1, § 3 of the Louisiana Constitution of 1974 which prohibits arbitrary, capricious or unreasonable discrimination on the basis of birth:[1]
"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
Although plaintiff has argued that the reference to birth may refer to national *798 origin, both proponents and opponents of the provision at the Constitutional Convention noted that Article 1, § 3 included within its scope unreasonable discrimination based on illegitimacy.[2] Plaintiff has also contended that the purpose of the provision was merely to abolish discrimination on the basis of birth with respect to state programs providing aid to dependent children.[3] However, a review of the proceedings of the convention demonstrates that the entire range of discriminatory practices based on illegitimacy was encompassed by the section.[4] Therefore, it is clear that the Louisiana Constitution requires an examination of any law which discriminates on the basis of birth to determine whether the statutory distinction is arbitrary, capricious or unreasonable.
The equal protection guarantee of Article 1, § 3 requires state laws to affect alike all persons and interests similarly situated. However, persons or interests may be classified differently by the legislature if a rational basis exists for the differentiation which is reasonably related to a valid governmental purpose. Succession of Robins, 349 So.2d 276 (La.1977); Williams v. Williams, 331 So.2d 438 (La.1976); Petition of Sewerage and Water Board of New Orleans, 257 La. 716, 243 So.2d 809 (1971). See also Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). The inquiry must therefore be to determine what valid state purpose is served by a statute which prohibits an acknowledged illegitimate child from being a legatee merely because his parent has legitimate descendants.
In Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), the United States Supreme Court considered the constitutionality of Article 919 of the Civil Code which excludes an acknowledged illegitimate child from the intestate succession of the father except as against the state and strangers. In declining to invalidate the statute as violative of the equal protection clause of the Fourteenth Amendment, the court found merit in the state's interest in promoting family life and in controlling the distribution of property within the state to enhance the stability of land titles. These same purposes were advanced in Trimble v. Gordon, supra, and in Succession of Captain, 341 So.2d 1291 (La.App.1977). However, as was noted by the dissenting judge in Succession of Captain, "there is no connection between a prohibition against a donation mortis causa to an illegitimate child and land titles. . . . A specific parental bequest by will, as attempted by Captain, the deceased, raises no problem with land titles." 341 So.2d at 1296 (Watson, J., dissenting). Therefore, the statute must be evaluated as a means to advance the legislative goal of promoting family life by discouraging illegitimacy.
Although the Supreme Court apparently accepted in Labine the argument that family life was protected and strengthened by discriminating against illegitimates in intestate successions,[5] in the more recent case of *799 Trimble v. Gordon, supra, the court stated that an Illinois statute which discriminated against illegitimates bore "only the most attenuated relationship to the asserted goal" (430 U.S. at 768, 97 S.Ct. at 1464, 52 L.Ed.2d at 39) of encouraging legitimate family relationships. The court reasoned that persons will not shun illicit relationships because any possible (and, frequently, undesired) offspring may be disadvantaged by their parents' disregard of social dictates.[6] The proposition is clearly theoretically tenuous and is belied by public health statistics which demonstrate that the rate of illegitimate births has more than doubled over a recent twenty year period;[7] approximately 20% of all children born today in Louisiana are illegitimate.[8]
Furthermore, one must question the reasonableness of a statutory scheme which in effect "punishes illegitimate children for the misdeeds of their parents." Labine v. Vincent, 401 U.S. at 557, 91 S.Ct. at 1030, 28 L.Ed.2d at 304 (Brennan, J., dissenting). Although family life and the moral perspective of society have greatly changed since Article 1483 became a part of our law, there has been little significant change in the way the parent-child relationship is regulated. The law continues to burden illegitimate children with disabilities, while those responsible for the breach of social and moral rules are unaffected. Unlike most states,[9] Louisiana does not consider adultery and fornication as crimes. The anomalous situation therefore exists in which the parties *800 responsible for the perceived breach of social rules are not punished, and those wholly innocent for the condition of their birth bear the full force of society's disapproval. In light of these considerations, Article 1483 violates the constitutional prohibition against arbitrary, capricious or unreasonable discrimination on the basis of birth.
The plaintiff has argued that the decision in Succession of Robins, supra, is distinguishable from the instant case because Bee Owen Thompson could have bequeathed her property to Robert Thompson by legitimatizing him under the provisions of C.C. 200. However, the mere fact that no insurmountable barrier prevented Thompson from being capable of inheriting from his mother does not eliminate the constitutional infirmities of a statute which discriminates on the basis of birth. As the United States Supreme Court noted in Trimble v. Gordon:
". . . Traditional equal protection analysis asks whether this statutory differentiation on the basis of illegitimacy is justified by the promotion of recognized state objectives. If the law cannot be sustained on this analysis, it is not clear how it can be saved by the absence of an insurmountable barrier to inheritance under other and hypothetical circumstances.
. . . Hard questions cannot be avoided by a hypothetical reshuffling of the facts . . . ." 430 U.S. at 773-774, 97 S.Ct. at 1467, 52 L.Ed.2d at 41-42. See also Labine v. Vincent, 401 U.S. at 551, 91 S.Ct. at 1027, 28 L.Ed.2d at 300, n. 17 (Brennan, J., dissenting).
For the reasons assigned, we affirm the judgment of the district court which granted judgment in favor of the defendant and which held Article 1483 of the Civil Code unconstitutional in that it denied the decedent's acknowledged illegitimate son the capacity to receive the legacy intended for him in his mother's testament, all at plaintiff's cost.
SUMMERS, C. J., and MARCUS and CULPEPPER, JJ., dissents.
NOTES
[*] Chief Judge William A. Culpepper participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Joe W. Sanders, Retired.
[1] Defendant also contends in the alternative that Article 1483 violates Article 1, §§ 2 and 4 of the Louisiana Constitution of 1974. Deciding the case on other grounds, we do not reach the merits of these arguments.
[2] State of Louisiana, Constitutional Convention of 1973, Verbatim Transcripts (39 Volumes; 1973-1974) at 12 Proceedings (38th day, August 29) 57, 62, 63, 76, 90. See also, Succession of Robins, 349 So.2d 276 (La.1977).
[3] Id. at 62-63 Mr. Roy: "We mention birth because, in the past the state has discriminated against legitimate and illegitimate children with respect to aid to dependent children. We felt that we wanted that clearly understood, that in certain categories, whether you're legitimate or illegitimate, should not allow state discriminatory practices against you."
[4] Id. at 90 Mr. Arnette: "Mr. Roy said that it meant you can't discriminate between legitimate and illegitimate children. I think it's the State's right and duty that it should have laws that discriminate against legitimate and illegitimates, and this has been recognized by the U. S. Supreme Court for the simple reason that we want to promote family unity. We want to promote marriages. We want to discourage illegitimate children."
[5] ". . . It may be possible that some of these choices are more `rational' than the choices inherent in Louisiana's categories of illegitimates. But the power to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States and the people of Louisiana to the legislature of that State. . . ." 401 U.S. at 538, 91 S.Ct. at 1021, 28 L.Ed.2d at 294.
[6] ". . . we have expressly considered and rejected the argument that a State may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships." Trimble v. Gordon, 430 U.S. at 769, 97 S.Ct. at 1464-1465, 52 L.Ed.2d at 39. See also, Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 173, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 778 (1970), where the court rejected the argument that "persons will shun illicit relations because the offspring may not one day reap the benefits of workmen's compensation."
[7] In 1953 the total number of illegitimate births in Louisiana was 6871, or 81.1 for every thousand live births. Division of Public Health Statistics, Louisiana State Department of Health, Statistical Report of the Division of Public Health Statistics, 16 (1953). In 1963 this number increased to 8666 illegitimate births, or 101.6 per thousand live births. Division of Public Health Statistics, Louisiana State Department of Health, Statistical Report of the Division of Public Health Statistics, 22 (1963). In 1973 illegitimate births had risen to 12,285, or 185.0 per thousand live births. Office of Public Health Statistics, Louisiana Department of Health and Human Resources, 1973, Vital Statistics of Louisiana, 25 (1973), cited in Note, 38 La.L.Rev. 189 (1977).
[8] Lorio, Succession Rights of Illegitimates in Louisiana, 24 Loy.L.Rev. 1, 2 n. 13 (1978).
[9] Alabama Crim.Code § 13A-13-2 (adultery); Alaska Statutes § 11.40.040 (cohabiting in a state of adultery or fornication) and § 11.40.010 (adultery); Arizona R.S. § 13-1408 (adultery); Colorado R.S. § 18-6-501 (adultery); GSA Connecticut § 53a-81 (adultery); District of Columbia Code § 22-1002; Florida S.A. Title 44, § 798.01 (living in open adultery), 798.02 (lewd and lascivious behavior) and 798.03 (fornication); Georgia Code Ann. § 26-2009 (adultery) and 26-2010 (fornication); Idaho Code §§ 18-6601 (adultery), 18-6603 (fornication) and 18-6604 (lewd cohabitation); Illinois Ann.Stat. 38 § 11-7 (adultery) and 38 § 11-8 (fornication); Kansas S.A. § 21-3507 (adultery); Ann.Code of Maryland, Art. 27 § 4 (adultery); Massachusetts G.L.A., chapter 272 § 14 (adultery), § 16 (lascivious cohabitation) and § 18 (fornication); Michigan S.A. § 28.567 [M.C.L.A. § 750.335] (lewd and lascivious cohabitation); Mississippi Code Ann. Title 97 § 29-1 (adultery and fornicationunlawful cohabitation); Missouri R.S. § 563.150 (adultery and gross lewdness); R.S. Nebraska 1977 Supp. § 28-704 (adultery); New Hampshire R.S. chapter 645.3 (adultery); New Jersey S.A. chapter 2A:88-1 (adultery) and 2A: 110-1 (fornication); New Mexico Statutes 1953 chapter 40A-10-2 (unlawful cohabitation); New York Penal Law § 255.17 (adultery); G.S. of North Carolina § 14-184 (fornication and adultery); North Dakota Century Code 121-20-08 (fornication), 12.1-20-09 (adultery) and 12.1-20-10 (unlawful cohabitation); Oklahoma S.A. 21 § 871 (adultery); G.L. of Rhode Island 11-6-2 (adultery) and 11-6-3 (fornication); Code of Laws of South Carolina § 16-15-60 (adultery or fornication); Utah Criminal Code 76-7-103 (adultery) and 76-7-104 (fornication); Vermont S.A. 13 § 201 (adultery); Code of Virginia § 18.2-344 (fornication) and § 18.2-365 (adultery); West Virginia Code § 61-8-3 adultery and fornication; Wisconsin S.A. 944.15 (fornication) and 944.16 (adultery); Wyoming Statutes 1957 § 6-86 (adultery and fornication). The legislatures of Hawaii, Indiana, Iowa, Maine, Ohio, Pennsylvania, South Dakota and Washington have recently repealed similar provisions.