378 So.2d 362 (1979)
Samuel QUIETT
v.
ESTATE OF James MOORE.
No. 63993.
Supreme Court of Louisiana.
September 4, 1979.
On Rehearing December 13, 1979.
Dissenting Opinion January 4, 1980.
Martin C. Schroeder, Jr., Howell, Schroeder & Cutshaw, Ltd., Baton Rouge, for defendants-applicants.
Albert J. Lord, Bankston & Lord, Zachary, for plaintiff-respondent.
SUMMERS, Chief Justice.
James Moore acquired a lot of ground in the town of Zachary, Louisiana, on June 15, 1959. On July 30, 1962 he executed a promissory note secured by a mortgage affecting this property, in which he confessed judgment on the note, and agreed that if the note was not paid according to its terms the property might be immediately sold by executory process. The note, in favor of Samuel Quiett, was in the principal sum of $1,300, payable on or before three years. On November 11, 1970 Moore died intestate, possessed of the encumbered Zachary property.
*363 Alleging that Moore had paid nothing on the note, that he was deceased and his heirs were unknown, Quiett filed a petition for executory process against the Estate of James Moore on February 1, 1971. He also prayed that an attorney at law be appointed to represent the estate. The District Judge appointed an attorney to represent the estate and ordered executory process to issue immediately, as prayed for and according to law. Pursuant to a writ of seizure and sale the Zachary property was sold at public sale without appraisal on March 17, 1971 to Quiett for $214.45.
Thereafter, on April 28, 1971, Lubertha Moore, wife of Daniel W. Mack, Sr., and Lucille Moore, wife of Edward Rogers, filed a petition in these proceedings for injunction. They alleged therein that they had opened the succession of James Moore and on March 3, 1971 were recognized as the heirs of James Moore and placed in possession of his estate as owners of an undivided one-half each of the Zachary property.
Their petition further alleged that they were unaware of the executory proceeding when the sale occurred; Quiett knew them to be the daughters of the deceased Moore; the attorney appointed to represent Moore's estate did not contact them; and the note sued on by Quiett was prescribed.
On these allegations they prayed for and obtained an order restraining Quiett from alienating or encumbering the property during the pendency of proceedings. They prayed further that the sale to Quiett be annulled, cancelled and set aside.
To this petition Quiett filed an exception of no right of action alleging that Lubertha Moore Mack and Lucille Moore Rogers had no right of action against him because they were not heirs of decedent James Moore.
At the trial of the exception of no right of action it was established by oral testimony that James Moore was legally married but once and then to a woman named Minnie Johnson, from whom he was later divorced. Thereafter he lived "common law" in the same house with Edith Goldman and her daughter, JoAnn Grayson. JoAnn Grayson testified that, as a result of sexual relations with James Moore, she gave birth to Lubertha and Lucille Moore and that James Moore reared these children as his own.
On the basis of these findings corroborated by several witnesses, and documents, the trial judge concluded on January 26, 1973 that Lubertha and Lucille were the illegitimate children of James Moore, informally acknowledged by him during his lifetime. Acknowledgement by the father could be shown by other ways than that provided by Article 203, the court held, on the authority of Succession of Corsey, 171 La. 663, 131 So. 841 (1930); Murdock v. Potter, 155 La. 145, 99 So. 18 (1924) and Taylor v. Allen, 151 La. 82, 91 So. 635 (1922). Thus, as acknowledged natural children, Lubertha and Lucille Moore were "called to the inheritance" of James Moore, their natural father, and therefore had a right of action to maintain their suit as proper parties in interest under the authority of the following language of Article 919 of the Civil Code:
"Natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the state."
In addition, the trial judge was of the opinion that the judgment of possession in favor of Lubertha and Lucille Moore bore a presumption of validity, and the law imposed the burden upon Quiett to refute that presumption. According to the trial judge, Quiett failed to meet this burden of proof. As a result the exception of no right of action was overruled.
Trial on the merits followed on September 27, 1977, during which Lucille testified that her natural father James Moore was survived by a sister named Lubertha Dawson. On the basis of this disclosure contradicting the evidence heard on the exception of no right of action and a finding that Lubertha and Lucille Moore were the natural children of James Moore, the trial judge held on the authority of Article 919 of the *364 Civil Code that Lubertha and Lucille Moore were not called to the inheritance of their natural father to the exclusion of his sister Lubertha Dawson, a collateral relation. Having made these determinations he concluded that Lubertha and Lucille had no right to sue to annul the sale to Samuel Quiett. The petition to annul the sale was therefore dismissed.
On appeal to the First Circuit, Lubertha and Lucille argued that the trial court erred: 1) in allowing Quiett, a "stranger" to the estate of James Moore to attack the judgment of possession; and 2) in holding that they had no right of action.
In an unpublished opinion, relying on the authority of Taylor v. Williams, 162 La. 92, 110 So. 100 (1926), the Court of Appeal declared that a judgment of possession was not conclusive of heirship and may be opposed by one who is an heir or creditor. In the opinion of the Court of Appeal, Quiett was a creditor because he had an apparent title to the property acquired in the Sheriff's sale which conferred upon him the right to oppose the judgment of possession.
Basing its decision on Article 919 of the Civil Code, the Court of Appeal affirmed the judgment of the trial court, holding that Lubertha and Lucille Moore, as the natural children of James Moore could not inherit his estate to the exclusion of Moore's collateral relation Lubertha Dawson, unless Dawson renounced her brother's succession.
In an application for certiorari here Lubertha and Lucille Moore contested the validity of the Court of Appeal opinion and for the first time raised the issue of the constitutionality of Article 919 of the Civil Code. They invoked the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Sections 2 and 3 of Article I of the Louisiana Constitution guaranteeing due process and equal protection of the laws and prohibiting discrimination against a person because of birth. No plea to that effect was filed in the District Court or the Court of Appeal and the issue was not considered there.
Inasmuch as we agree with the judgment of the Court of Appeal on its finding of fact and the application of the law to those facts, only the contention that Article 919 of the Civil Code is unconstitutional remains to be resolved.
It has long been the rule of law in this State that a presumption of constitutionality attaches to laws enacted by the legislature until the contrary is made to appear, and that as a general rule a litigant cannot raise the unconstitutionality of a statute unless its unconstitutionality is specially pleaded in the trial court and the grounds particularized. State of Louisiana v. Madere, 352 So.2d 666 (La.1977); Johnson v. Welsh, 334 So.2d 395 (La.1976); Becker v. Allstate Insurance Co., 307 So.2d 101 (La. 1975); Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971); Maher v. City of New Orleans, 256 La. 131, 235 So.2d 402 (1970); Creel v. Creel, 218 La. 382, 49 So.2d 617 (1950); City of New Orleans v. Plotkin, 205 La. 490, 17 So.2d 719 (1944); Ricks v. Close, 201 La. 242, 9 So.2d 534 (1942); Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547 (1941); State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 183 So. 219, cert. denied 305 U.S. 637, 59 S.Ct. 108, 83 L.Ed. 410 (1938); City of Shreveport v. Pedro, 170 La. 351, 127 So. 865 (1930).
For the reasons assigned the claim of unconstitutionality is denied and the judgment of the Court of Appeal is affirmed.
DIXON, J., concurs in the result.
CALOGERO, J., dissents.
TATE, J., dissents and assigns reasons.
DENNIS, J., dissents for the reasons assigned by TATE, J.
TATE, Justice, dissenting.
I respectfully dissent. The majority is in error in holding that the unconstitutionality of the statute upon which the defendant relies is not before us for decision. It further errs in failing to note two non-constitutional issues which should be resolved in the relators' favor, thus avoiding the fraudulent foreclosure sale of their father's home, worth $9,000, based on a note of $1,300 which was prescribed on its face.

*365 (1)
The plurality opinion (one judge concurred in the result of affirmance for unspecified reason) holds that the relators may not raise the constitutionality of Civil Code Article 919 in this court, since they did not plead such unconstitutionality in the trial court. However, the trial court applied Article 919 on its own motion, as will be shown below, after the trial was concluded.
Under the Code of Civil Procedure and well-settled principle, the relators were not required to plead the unconstitutionality of a statute upon which a defense to their claim was based. This principle applies all the more in the present situation where the opponent did not himself plead the statute, which the trial court noticed on its own motion as allegedly applicable.
When "new matter" by way of defense is alleged in "exceptions, written motions, and answers," no replicatory pleadings are required of the plaintiff and, as a matter of law, all such new matters "shall be considered denied or avoided." La.C.Civ.P. art. 852.
In Harris v. Monroe Building & Loan Ass'n, 185 La. 289, 169 So. 343 (1936), we specifically held that the unconstitutionality of a statute need not be pleaded by a plaintiff when it forms no part of his cause of actionhe is "not required to anticipate in [his] petition the defense which defendant might choose to adopt." 169 So.2d 345. We therefore held that the issue of the unconstitutionality of a statute relied upon by the defendant was properly before us for review.[1]
The issue of the constitutionality of Article 919 is therefore before us, if we reach it. We need not reach this issue, however, because the judgment below is erroneous aside from Article 919's unconstitutionality.

(2)
The plaintiff-daughters' suit to annul the foreclosure sale was based upon it being fraudulently provoked without notice to them, and being based on an obligation prescribed on its face. In two lines of testimony at the trial on the merits, it was incidentally mentioned that the decedent had been survived by a "sister." Because of this reference, the trial court noticed on its own, in its written judgment after trial, the alleged application of Civil Code Article 919under the terms of which, a collateral excludes illegitimate children from their intestate father's succession even though he has acknowledged them as his own during his lifetime.
No other evidence proved this relationship of the surviving "sister" with the decedent. The record does not show, for instance, whether the surviving sister and the decedent were legitimates or illegitimates (or one legitimate and one illegitimate), with all the potential consequences of depriving an illegitimate collateral of any claim to the intestate's succession, especially when the decedent is survived by "posterity."[2]
In the absence of evidence as to the relationship of the (legitimate?, illegitimate?) "sister" to the (legitimate?, illegitimate?) decedent, the trial court was in error in assuming legitimacy of both as products of marriage(s) of their parents to one another and, as a consequence of this assumption, in finding, sua sponte, that the decedent's acknowledged *366 natural children were excluded from his succession by this "collateral." The defendant Quiett had the burden, which was not met, of overcoming the prima facie showing of the plaintiffs' heirship arising from the judgment of possession recognizing them as the decedent's heirs. Taylor v. Williams, 162 La. 92, 110 So. 100 (La.1926).

(3)
We granted certiorari, 368 So.2d 145 (La. 1979), not only because of doubt of the constitutionality of La.Civ.C. art. 919, but also because we entertained doubt that a stranger to the succession (the foreclosing creditor) had standing to attack the heirship of the plaintiff daughters in their proceeding to annul the sale to him of their deceased father's propertyat least when they were so recognized as heirs by a judgment of possession (affording them prima facie title against trespassers and strangers, Taylor v. Williams, 110 So. 100 (La.1926)), and when the collateral who allegedly excluded them as heirs had not appeared to claim a superior right, and when the annulment sought of the fraudulent sale of the decedent's property was equally in the interest of the daughters and of the collateral.
The majority does not reach this serious issue.
In the last analysis, I simply do not believe we could hold that acknowledged children have absolutely no interest (right) to prevent a sale of their deceased father's home, made without notice to the heirs and without appraisal, simply because some other relative (if apprised of the claim and of any right of inheritance) should have been joined also (assuming she wished to make a claim to receive the father's property instead of his children). It might be that such other relative should be joined as a necessary or even an indispensable party or perhaps the daughters should have been required to open an administration and joined the administrator as a necessary party to oppose the sale but surely the daughters have sufficient interest to avoid dismissal, on an exception of no right of action (want of interest), of their suit to return the fraudulently foreclosed home to their father's estate.

(4)
With regard to the constitutionality of Civil Code Article 919, our state constitution unequivocally prohibits unreasonable discrimination against a person because of his birth, including his illegitimacy. La. Const. of 1974, Art. 1, Section 3; Succession of Thompson, 367 So.2d 796 (La.1979); Succession of Robins, 349 So.2d 276 (La.1977). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution affords a similar protection. Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) and the decisions cited therein.
Article 919 provides that acknowledged illegitimate children of a father are excluded by collaterals from his intestate succession. Legitimate children inherit from their parents to the exclusion of collaterals, Article 902, and acknowledged illegitimate children inherit from their mother to the exclusion of collaterals, Article 918.
The denial of inheritance rights to acknowledged illegitimate children of a father, when he is survived by collaterals and to no other legitimate or acknowledged illegitimatesrepresents a classification which unreasonably discriminates against the former children by reason of their birth. It is an unconstitutional classification because it lacks a rational basis related to any valid governmental purpose, such as the promotion of legitimate family relationships or the facilitation of prompt and definite determination of the descent[3] of property left by a Louisiana decedent. Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); Trimble v. Gordon, cited above; Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, *367 28 L.Ed.2d 288 (1971); Succession of Thompson, cited above; Succession of Robins, cited above.[4]
Conclusion
For the reasons assigned, I respectfully dissent with full confidence that, after further study, a majority of the court will wish to reconsider its ruling. At the very least, the court is obliged to consider the non-constitutional reasons why the judgment below was clearly, in my opinion, erroneous and which the present plurality opinion has overlooked.

ON REHEARING
MARCUS, Justice.[*]
We granted a rehearing in this case to consider whether the trial court correctly dismissed the petition of appellants Lubertha Moore Mack and Lucille Moore Rogers, the two acknowledged illegitimate daughters of the decedent, James Moore, based on their failure to disclose a right of action to institute suit. In our original opinion, we did not consider this issue, but rather upheld the dismissal of the petition after refusing to consider appellants' contention that La.Civ.Code art. 919 is unconstitutional because appellants had not raised this issue in the trial court. Finding merit in appellants' contention that the trial court improperly noticed the failure of appellants' petition to state a right of action, we need not reach the claim of unconstitutionality.
The facts of this case were set forth in our original opinion and need not be repeated herein. Appellants contended in their original application to this court that it was error for the trial court to have maintained the exception of no right of action because they had been recognized as the heirs of their deceased father and sent into possession of his estate by a judgment of possession rendered in his succession proceedings. In maintaining the exception of no right of action, the trial court held that appellants had no right to sue to annul the sheriff's sale of their deceased father's property to Samuel Quiett based on testimony during the trial on the merits which disclosed the existence of a surviving "sister" of the decedent since, under La.Civ. Code art. 919, a collateral excludes acknowledged illegitimate children from the intestate succession of their father. We find that the trial court erred in maintaining the exception of no right of action based on the evidence in the record.
La.Code Civ.P. art. 3062 provides:
The judgment of possession rendered in a succession proceeding shall be prima facie evidence of the relationship to the deceased of the parties recognized therein, as heir, legatee, surviving spouse in community, or usufructuary, as the case may be, and of their right to the possession of the estate of the deceased.
A judgment of possession is prima facie evidence of the right of the heirs in whose favor it was rendered to take possession of the decedent's estate; however, it is not a basis for a plea of res judicata or conclusive evidence against persons having an adverse interest in or claim against the estate, such as heirs or creditors of the estate. Taylor v. Williams, 162 La. 92, 110 So. 100 (1926). In order to sustain the exception of no right of action in this case, the evidence must overcome the presumption that appellants are decedent's lawful heirs; otherwise, the judgment of possession in appellants' favor would entitle them to maintain this suit against Samuel Quiett. Evidence sufficient to overcome appellants' right to maintain this suit must be such that would preclude appellants' right to a judgment of possession.
*368 Under La.Civ.Code art. 919, acknowledged illegitimate children (natural children) inherit in the intestate succession of their fathers only when the father has left no legitimate descendants, ascendants, collateral relations or surviving spouse. See Jones v. Hunter, 2 La.Ann. 254 (1847); Succession of Matte, 346 So.2d 1345 (La. App. 3d Cir. 1977); Succession of Sharbino v. Administration, 285 So.2d 545 (La.App. 3d Cir. 1973). Assuming the "sister" referred to during the trial wished to claim decedent's estate, evidence sufficient to preclude appellants' right to the judgment of possession must demonstrate that the relationship between decedent and the sister was one of legitimate brother and sister. Alternatively, under La.Civ.Code art. 923,[1] evidence that decedent and the sister were both acknowledged illegitimate children of the same parent would also give the sister a superior claim to decedent's estate. However, if decedent was legitimate and the sister was illegitimate (or vice versa), the sister would have no right to claim decedent's estate because "legitimate brothers and sisters of a natural child ... are never called to the succession of the natural child." Succession of Wesley, 224 La. 182, 191, 69 So.2d 8, 12 (1953).
Because of the testimony at trial referring to decedent's sister,[2] the trial court noticed on its own motion the failure of appellants to disclose a right of action to bring the suit, though no evidence was adduced to show what relationship existed between decedent and the surviving sister. In absence of evidence establishing the relationship between these parties, it was error for the trial court to assume either the legitimacy of both or the acknowledged illegitimacy of both.
Quiett had the burden of overcoming the presumption of heirship in appellants' favor by virtue of their judgment of possession. Quiett introduced no evidence to prove that the relationship between decedent and the sister was one that would preclude appellants' right to a judgment of possession, nor of the surviving sister's (or her heirs') intention to attack appellants' judgment and claim decedent's estate, assuming she had a legal right to do so. Without such evidence, it was error for the trial court to have dismissed appellants' suit based on an exception of no right of action.

DECREE
For the reasons assigned, the judgment of the court of appeal, affirming the judgment of the trial court sustaining the exception of no right of action and dismissing appellants' suit, is reversed and set aside and the case is remanded to the trial court for further proceedings consistent with the views herein expressed.
SUMMERS, C. J., dissents and assigns reasons. Also, plaintiff Quiett is entitled to apply for a rehearing.
SUMMERS, Chief Justice (dissenting).
As I understand the majority opinion on rehearing its principal material finding is that no evidence was adduced to show what relationship existed between decedent and the surviving sister. Such a finding, contrary to the finding of the trial judge and the Court of Appeal, cannot be supported by the record. Both of the illegitimate children of the decedent acknowledged under oath at the trial on the merits that Lubertha Dawson was decedent's sister, that they knew her and that they attended *369 decedent's funeral with her. These sworn admissions against interest are entitled to the weightiest consideration in this case.
The validity of the trial court and Court of Appeal finding to the effect that Lubertha Dawson was the sister of the decedent has not been contested by the illegitimate children of the decedent. Instead they attack the constitutionality of Article 919 of the Civil Code which confers upon collateral relations a preference to the exclusion of natural children in the estate of their natural father.
I would affirm the decision of the trial court and Court of Appeal.
NOTES
[1] See also Long v. Northeast Soil Conservation District, 226 La. 824, 77 So.2d 408 (La. 1955), where even a defendant by way of exception was allowed in the appellate court for the first time to raise the unconstitutionality of a statute relied upon by the plaintiff under circumstances where it was "impossible for the relator [defendant] to urge and plead [it] in the [trial] court" (since the statute was enacted after the trial).
[2] If, for instance, the decedent Moore and his surviving sister were both illegitimates, the implication of the Civil Code is that the illegitimate's posterity inherit to the exclusion of natural brothers and sisters. La.Civ.C. arts. 922, 923. See Planiol, Civil Law Treatise, Volume 3, Section 1850 (LSLI translation, 1959), interpreting to this effect the similar articles of the French Civil Code. Cf. Articles 918 and 919, which read together are susceptible to the interpretation that only "collateral of lawful kindred," Art. 918, are the type of collaterals that exclude natural children under Article 919.
[3] The acknowledgement of the illegitimate must be made before the parent's death or by testament, but our law makes no distinction in the way by which fathers and mothers may acknowledge their natural children. La.Civ. Code arts. 202-206. The ease or difficulty of proof of acknowledgement is the same in the case of a father and of a mother.
[4] The narrow constitutional argument before us does not question, for instance, the reasonableness of the preference accorded legitimate over illegitimate children in an intestate succession, nor does it concern Article 919's preference over illegitimate children of a surviving spouse or ascendants.
[*] Honorable Jesse N. Stone, Jr. served as Justice Ad Hoc in the vacancy created by the resignation of Tate, J.
[1] La.Civ.Code art. 923 provides:

If the father and mother of the natural child died before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants.
[2] The following testimony was the basis for the trial court's decision upholding the exception of no right of action.

Testimony of Lubertha Moore Mack:
A My sister and I and my husband and my daddy's sister went [to the funeral] and his niece's husband.
Q Your daddy's sister ... what's her name?
A Lubertha Dawson. Testimony of Lucille Moore Rogers:
Q Did you know James Moore's sister?
A Lubertha?
Q Yes. What's her full name?
A Lubertha Dawson.