379 So.2d 1172 (1980)
SUCCESSION OF Sidney BROWN, Jr.
No. 14034.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1980.
Rehearing Denied February 29, 1980.
*1173 Weiner, Weiss, Madison & Howell by John M. Madison, Jr. and James R. Madison, Shreveport, for plaintiffs-appellants.
S. P. Davis, Shreveport, for defendant-appellee.
Before MARVIN, JONES and McCLENDON, JJ.
En Banc. Rehearing Denied February 29, 1980.
JONES, Judge.
Plaintiffs, Ruby Atkins, Betty Jean Lee, Nathaniel Brown, and Eugene Brown, sue to annul a judgment of possession recognizing defendant, Effie Brown, as the sole heir of Sidney Brown, Jr. From a judgment rejecting their demands plaintiffs appeal. At issue is the constitutionality of Article 919 of the Louisiana Civil Code under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and under Article 1, § 3 of the Louisiana Constitution. We reverse, finding Article 919 to be invalid under both of these constitutional provisions.
All parties at trial stipulated that plaintiffs are the acknowledged illegitimate children of Sidney Brown, Jr., who died on January 1, 1978 in Caddo Parish with no children having been born of his two marriages. He had, however, in 1965 adopted defendant, Effie Brown, who was formerly another illegitimate child. On February 20, *1174 1979 plaintiffs filed this suit seeking a rescission of the judgment of possession.
As amended by Act 607 of 1979's regular session, Article 919[1] provides as follows:
"Illegitimate children are called to the inheritance of their father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the state ..."
Article 919 excludes acknowledged illegitimates from participating in the succession of their father when he is survived by legitimate descendants, ascendants, collateral relatives, or surviving spouse. Plaintiffs challenge this article as infringing upon their constitutional guarantee of equal protection of the law because Article 919 discriminates against acknowledged illegitimates in a constitutionally impermissible manner. Plaintiffs contend that on the basis of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); and Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), Article 919 is no longer constitutionally valid.
Article 919 was previously challenged in Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). The U.S. Supreme Court there found Article 919 not to be a violation of the rights of the acknowledged illegitimate. The court held that because the State of Louisiana has the power to regulate the disposition of property left in Louisiana by a man dying there, because Louisiana has the authority to make rules designed to strengthen family life, and because there was no insurmountable barrier created by Louisiana to prevent this illegitimate from inheriting, Article 919 was free from any constitutional infirmities. The scrutiny given Article 919 was quite cursory and was comparable to the minimal equal protection analysis given legislation in the sphere of police power and economic regulation. See City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), in which it was stated:
"Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." Id. 427 U.S. at 303, 96 S.Ct. at 2516-17, 49 L.Ed.2d at 516-517.
However, this minimal scrutiny has been rejected as the proper test of a statute discriminating against persons on account of the illegitimacy of their birth [Trimble and Lalli, supra.] The two-tier approach discussed in Dukes, supra, (strict scrutiny for all statutes trammeling fundamental personal rights or drawn upon the suspect classes of race, religion, or alienage and minimal scrutiny for all other statutes) has been augmented by a middle level of analysis for statutes grounded upon such categories as sex [Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979)] and, more importantly for our purposes, birth [Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976)]. The test to be applied is not the minimal protection one used in Labine in 1971 but is now this middle level of much more scrutinizing inquiry:
"... classifications based on illegitimacy are not subject to `strict scrutiny', they nevertheless are invalid under the Fourteenth Amendment if they are not Substantially related to permissible state interests." Lalli 99 S.Ct. at 523. [emphasis ours]
Under this level of equal protection analysis the Illinois statute in Trimble, which permitted an illegitimate to inherit from his or her father only if the father had both acknowledged the child and married the mother, was held to be constitutionally infirm. The court in Trimble, in addition to affirming Mathews' rejection of the minimal scrutiny used in Labine, also repudiated two of the "rational" bases upon which *1175 Labine was grounded. Trimble rejected as proper justification for a statute discriminating against illegitimates the promotion of legitimate family relationships accepted in Labine by "only the most perfunctory analysis". Trimble 97 S.Ct. at 1464. The court found the Illinois statute to bear "only the most attenuated relationship to the asserted goal", Trimble at 1464, that is, the promotion of legitimate families." [We] have expressly... rejected the argument that a State may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships." Trimble at 1464-65. This ground upon which Article 919 was held constitutional is therefore now invalid.
The court also rejected the presence or absence of an insurmountable barrier to the illegitimate's right to inherit as being "an analytical anomaly" [Trimble at 1467) and unacceptable as a rational basis to support the discrimination. Here, as in Trimble, the issue is the constitutionality of a state intestate succession law that treats illegitimate children differently from legitimate children. The law is to be analyzed as to whether this legislative distinction is justified by the achievement of recognized state objectives. Trimble makes clear that Labine's postulations as to how the illegitimate could have succeeded to her father's estate (e. g., if the father had left a will, if the father had legitimated her) are mere hypotheses which will not clear the statute of its underlying invalidity. "Hard questions cannot be avoided by a hypothetical reshuffling of the facts." Trimble at 1467.
The only remaining rationale from Labine left valid after Trimble is the state's interest in the orderly disposition of property at death. Trimble recognized that this acceptable state goal is "particularly within the competence of the individual States". Trimble at 1465. The court recognized that the difficult and grave problem of proving paternity "might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally." Trimble at 1465, Lalli, supra, re-emphasized the fact that the just and orderly devolution of property is an area in which the states have an important interest. However, this important interest is not unquestionable but must yield in the face of constitutional mandates.
"For at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws." Trimble at 1465.
The court in Trimble, supra, recognized that the problems of proof of paternity may warrant some discrimination against illegitimates but that any state statute so doing must be "carefully tuned to alternative considerations" (quoting from Mathews, supra ). The Illinois statute contained no alternative considerations and was broadly prohibitive to illegitimates who had been acknowledged but whose parents had not married one another. As stated in Trimble at p. 1466:
"Difficulties of proving paternity in some situations do not justify the total statutory disinheritance of illegitimate children whose fathers die intestate."
Lalli, supra, contained the supreme court's next declaration as to how states may constitutionally achieve their goal of stable land titles and orderly disposition of property and at the same time award illegitimates equal protection of the law. In this case a New York law requiring an illegitimate to obtain an order of filiation within two years of his birth (although the court looked at the statute only from the view-point that it required a filiation order during the lifetime of the father, see 99 S.Ct. FN. 5, p. 524) was held to be constitutional. This statute was passed in 1965 to soften the strict law of the past which allowed an illegitimate to inherit only from his mother. Unlike the statute in Trimble the New York law did not disqualify an unnecessarily large number of illegitimate *1176 children but only barred inheritance when the illegitimate had failed to obtain a filiation order during the father's lifetime. The state's primary goal was to provide for the just and orderly disposition of property at death. The means chosen to achieve this goal, i. e., the requirement of a filiation order during the lifetime of the father, was held to be substantially related to the important state interest, and therefore the statute was not unconstitutional under the Equal Protection Clause.
The supreme court recognized the New York Legislature intended to give illegitimates "in so far as practicable" inheritance rights on the same level as legitimates and simultaneously guard the important and acceptable state goals. Different from the statute reviewed in Trimble, the New York statute was the result of the legislature's having considered and enacted "the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity". Trimble 97 S.Ct. at 1465. Emphasizing these and other differences between the Illinois and New York laws (viz., the Illinois requirement of marriage and the Illinois goal of promotion of family relationships), the supreme court held the New York statute to be a constitutionally acceptable means of achieving the state's rational goal of orderly property devolution because these means were substantially related to that goal.
In our view Lalli is neither a limitation upon nor an overruling of Trimble and its underlying rationale. Rather, the supreme court uses the Trimble approach (the middle level of equal protection analysis) to determine whether the New York statute is constitutional. In so deciding, the court elucidates what type of statute will be held to balance acceptably the equal protection rights of the illegitimate and the achievement of the state goals of a stable property system and orderly distribution of intestate property.
The following quotes from the Trimble and Lalli opinions clearly announce that any state statute which totally disinherits illegitimates is invalid for the reason that it violates the Equal Protection provision of the U.S. Constitution:
"For at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws. Because it excludes those categories of illegitimate children unnecessarily, Section 12 is constitutionally flawed." Trimble at 1465.
"The Illinois statute in Trimble was constitutionally unacceptable because it effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents. The reach of the statute was far in excess of its justifiable purposes." Lalli 99 S.Ct. at 527.
We begin our analysis of Article 919 with the recognition that the goals it seeks to achieve are stability in land titles and an orderly devolution of property upon death. These goals are of course proper, but the means sought to achieve them must be substantially related to the state interest which Article 919 seeks to serve. As stated in Lalli at 525:
"This interest is directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved."
Lalli recognized the problems that argue against treating illegitimates identical to all other heirs of an intestate fatherproof of paternity, service of process, finality of decrees in estate distribution, spurious claims. None of these difficulties, however, justify a state statute which statutorily bars any illegitimate from participating in his father's estate as does Article 919. Art. 919 serves to achieve the proper state goal by excluding each and every acknowledged illegitimate child who happens to have the statistically probable misfortune of having his natural father survived by any legitimate descendant, any ascendant, any collateral relation, or a wife. This meat-ax effect of cutting out illegitimates in all conceivable situations (except for the *1177 happenstance of the natural child's being his father's sole survivor) is certainly not "tuned to alternative considerations". The means devised are not substantially related to the goal sought to be achieved in that the same goal could be achieved by not excluding significant categories of illegitimates who could be allowed to inherit without disrupting the orderly settlement of the estates of intestate fathers. Article 919 effects a total statutory disinheritance of acknowledged illegitimates whose natural fathers are survived by either legitimate descendants, ascendants, collaterals, or surviving spouse. "The reach of the statute was far in excess of its justifiable purposes." Lalli at 527, discussing the Illinois statute struck down in Trimble. Article 919 likewise stretches too far when it pushes outside the parameters of intestate successions all illegitimates who are not sole survivors of their fathers. Because the illegitimates here were excluded from their father's succession without ever having any procedural opportunity to place themselves in his intestate succession (despite the fact that they were acknowledged, they did not have the statutory device available to the illegitimate in Lalli,] Article 919 disinherits too broadly and thus violates the Equal Protection Clause by failing to have a substantial relationship to its goal.
After Labine, supra, was decided in 1971, the 1974 Louisiana Constitution was adopted, and it significantly contained a mandatory prohibition against any arbitrary, capricious, or unreasonable discrimination based on a person's birth. Art. 1, § 3 provides as follows:
"No person shall be denied equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime." [emphasis ours].
The members of the Constitutional Convention intended this Article to include:
"... within its scope unreasonable discrimination based on illegitimacy." Succession of Thompson, 367 So.2d 796 (La.1979) at 798.
The Constitutional Convention intended all unreasonably discriminatory practices based on illegitimacy to be encompassed within the section. See Thompson and footnotes 2 and 4 at 798:
"Therefore, it is clear that the Louisiana Constitution requires an examination of any law which discriminates on the basis of birth to determine whether the statutory distinction is arbitrary, capricious, or unreasonable."
Our conclusion that Article 919 violates the right to equal protection of the laws of illegitimates because (1) the total exclusion means adopted by Article 919 bears no substantial relation to the state goal of the protection of land titles and (2) the distinction drawn between these illegitimate children and all other relations of the decedent is arbitrary, capricious, and unreasonable is not a startling new development. It is one further extension in a line of judicial determinations striking down Louisiana laws which discriminate unconstitutionally against illegitimates.
The U.S. Supreme Court has three times invalidated Louisiana statutes because of their denial of equal protection rights to illegitimates. Levy v. La., 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), struck down the discriminatory effect of our wrongful death statute (LSA-C.C. 2315) as applied to illegitimates because it gave legitimate, but not illegitimate, children a cause of action for the wrongful death of their parents. In Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), a provision of our workmen's compensation law was held to violate the Equal Protection Clause because it denied equal recovery rights to dependent unacknowledged illegitimates. Glona v. American Guarantee & Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), likewise ruled unconstitutional a construction of LSA-C.C. 2315 that denied *1178 a cause of action to a mother for the wrongful death of her illegitimate child.
The Louisiana Supreme Court has found unconstitutional under Art. 1, § 3 of the 1974 Constitution testate codal provisions which discriminate against illegitimates. Succn. of Thompson, supra, found Article 1483, which denied acknowledged illegitimates the right to receive by testament any amount beyond mere alimony when there were legitimate descendants of the testator, to be an arbitrary, capricious, and unreasonable statutory distinction based upon birth in violation of the constitutional prohibition. Earlier, C.C. Article 1488 was also held to be a violation of the rights granted illegitimates in Art. 1, § 3 because it prevented a parent from bequeathing any substantial part of his estate to a child conceived of an adulterous or incestuous connection. Succession of Robins, 349 So.2d 276 (La.1977).
The Louisiana Supreme Court recently granted writs for the purpose of considering the constitutionality of Article 919 (see Justice Tate's dissent in the original hearing). In this case the trial court held that two acknowledged illegitimates were not called to the succession of their natural father because of the existence of a collateral relation, the decedent's sister. Quiett v. Estate of Moore, 378 So.2d 362 (La.1979). On the original hearing and the rehearing (Dec. 13, 1979) the court declined to consider the constitutional issue and decided the case on other grounds.
We hold that Article 1, § 3 of the Louisiana Constitution prohibits the total denial of inheritance rights of acknowledged illegitimates in the successions of their natural fathers who are survived by other relations, even though Article 919 is designed to serve the important state purpose of protecting land titles. The unlimited discrimination present in Article 919 is unreasonable and arbitrary and thus contrary to the provisions of our State Constitution. Although Article 919 has the sound purpose of protecting the reliability of property titles, the same purpose could be satisfactorily guaranteed by the legislature's providing necessary tests and guidelines to assure all illegitimates could inherit equally with legitimates except those illegitimates to whom granting such a right of inheritance would tend to have the effect of creating instability of titles.
The method chosen by the legislature to achieve this equality could take any of several forms. The New York Legislature did it by requiring the illegitimate to establish paternity within two years of his birth and before his father's death. See Lalli, supra. The U.S. Supreme Court, applying their jurisprudentially developed guidelines of reasonableness, found this plan (at least as to the requirement of a filiation order before the father's death) to be constitutionally acceptable. As suggested by H. Alston Johnson in his Report To The Louisiana State Law Institute (Revision of the Louisiana Civil Code of 1870, Bk. Ill, Titles I and II, Successions and Donations, Dec. 7, 1979), the Louisiana Legislature could require proof of filiation to be made (1) only during the lifetime of the father, (2) within six months of the father's death, or (3) within six months after the majority of the illegitimate claiming as heir. The statutory scheme is one which is peculiarly within the province of the legislature:
"The orderly disposition of property at death requires an appropriate legal framework, the structuring of which is a matter particularly within the competence of the individual States. In exercising this responsibility, a State necessarily must enact laws governing both the procedure and substance of intestate succession." Trimble 97 S.Ct. at 1465.
Our legislature could and should protect the soundness of our land titles by evolving a test permitting illegitimates to inherit equally with legitimates under circumstances where such a rule does not endanger title soundness, and prohibiting their right to inherit equally when to do so would threaten the stability of titles. A legislative rule conceived along these lines would not be unreasonable or arbitrary even though necessarily containing some discrimination based upon birth and under these circumstances *1179 would not be contrary to Article 1, § 3.
This function being legislative rather than judicial, we have no choice but to hold that Article 919 in its present form is contrary to the Louisiana Constitution. We anticipate that the legislature will in the near future address itself to the problem of protecting our land titles against spurious or stale claims of persons asserting their status as acknowledged illegitimates and therefore as heirs in such a manner that the new statute will meet the test of constitutionality under both the Louisiana and the U.S. Constitutions.
The judgment below is REVERSED and the judgment of possession initially rendered in this succession signed February 23, 1978 is annulled. The case is REMANDED in order for the trial court to determine the amount which defendant received from the sale of the succession property so that an accounting may be made in accordance with a new judgment of possession to be rendered in accordance with the views here expressed, and for such further proceedings as may be appropriate and in accordance with law. Appellee is assessed all costs.
NOTES
[1] This Act made no substantive change in Art. 919. It substituted the word illegitimate for natural as the first word in the article and eliminated the word natural preceding the word father.