JASPER E. JONES, Judge.
This is a suit to establish filiation brought by the plaintiff-appellant, Vivian Marie Turner, on behalf of her minor son, Juvante Turner. The suit also sought child *635 support. The defendant-appellee is Arthur Rochelle. The plaintiff appeals the trial court’s judgment rejecting her demands for failure to prove filiation by a preponderance of evidence.
FACTS
On March 13,1981, the plaintiff filed suit seeking a judgment recognizing the defendant as the biological father of Juvante and ordering the defendant to pay child support in the amount of $350 per month. Plaintiffs sought the appointment of medical experts to test the defendant’s blood and an order directing the defendant to submit to the blood test. In accordance with LSA-R.S. 9:396[1] et seq. the court ordered the blood tests which were finally completed on September 24, 1984.
At trial the parties stipulated to the admissibility of the written conclusions of the appointed experts that there was a 96.7% likelihood that the defendant could be the biological father of the child.
The plaintiff has never been married and has two other illegitimate children whose ages were 9 and 7 at the time of Juvante Turner’s birth on July 11, 1980. Juvante’s birth resulted from a normal term pregnancy. The plaintiff testified she and the defendant, who was then 56 years old, began dating in June of 1979, and they engaged in sexual intercourse on a regular basis at her residential duplex until February of 1980. Plaintiff became pregnant in October, 1979. Plaintiff stated the defendant terminated the relationship after she informed him that problems with her pregnancy precluded further sexual relations. She testified the defendant was the only man that she had dated or had sexual relations with during the period of their courtship between June, 1979, and February, 1980. The plaintiff related that the defendant had given $100 cash to her mother for the benefit of the baby while she was in the hospital at the time of the birth of the child and that he subsequently had given her various amounts of cash to be used to support the child. She admitted that the defendant’s name did not appear bn the birth certificate but, in unrebutted testimony, explained that she was not permitted to place the father’s name on the birth certificate as she was not married to him. She also acknowledged the defendant had never admitted paternity, as he asserted that he was “too old.” The defendant had never given the child clothes, toys or other gifts.
The plaintiff called as a witness Ms. Joyce Cogburn, her neighbor in the adjoining unit of the duplex during the time plaintiff and defendant were courting. Ms. Cogburn testified she first met the defendant in the latter part of July of 1979 when the defendant was carrying the plaintiff in his automobile to and from work. She stated plaintiff and defendant were constantly together. Ms. Cogburn also related that she was fully aware of the plaintiff’s life style during this period as she and plaintiff visited constantly in each other’s units. This witness testified the defendant was the only man the plaintiff dated and that he was constantly over at plaintiff’s house until February of 1980 when the relationship cooled. Ms. Cogburn concluded by describing one instance two months after the birth of the child when the defendant visited the plaintiff at her residence and, upon viewing the child, referred to the baby as his “pretty son.”
Michelle Cogburn, Joyce Cogburn’s then 17 year old daughter, Dorothy Washington, the plaintiff’s mother and Shirley Gilbert, *636 plaintiff’s sister, all testified and generally corroborated the testimony of the plaintiff and Joyce Cogburn.
The defendant testified he had never dated the plaintiff and that she was just “one-of-the-fellows” who liked to go to the Cross Lake Bar to shoot pool and drink. The trial judge made the following findings of fact which indicated’the trial court did not believe this part of defendant’s testimony. “Mr. Rochelle was picking the plaintiff up on occasions to go to work, bringing her home from work, and visiting her from time to time in the evening.” Defendant related that he had never been to the plaintiff’s residence but admitted under cross examination that he had sexual relations with her there one night in the latter part of September but could not recall which year.[2] He asserted that this was his only such sexual encounter with plaintiff. He argued he could not be the father because though he did achieve penetration he did not have an orgasm. He also testified that on separate occasions he had loaned plaintiff $100 and $5.00 and that on one occasion he had passed the hat among plaintiff’s acquaintances at work and collected $50 for her. He also asserted that during the time that he had sex with the plaintiff she was seeing two other men. He named one of these men and described what he did for a living and where he worked. He also named the other man and asserted that she was seen with him at a dance by defendant’s brother. The defendant presented no specific evidence to substantiate these contentions nor any witness to otherwise corroborate any of his testimony.
The trial court rendered judgment rejecting plaintiff’s demands based for the most part on the following written reasons:
The defendant’s testimony, on the other hand, is that he did have sex relations with her on one occasion, but not close enough to the time when she became pregnant to have been the father. Additionally, he is fast approaching the age of 60. This Court is called on to decide if the plaintiff established by a preponderance of the evidence that Mr. Rochelle is the biological father, and if the burden is met, how much child support he will be obliged to pay for the next dozen or more years. Other facts supporting the defendant are that the plaintiff testified that she had borne two children out of wedlock prior to this child’s birth, and the indication of a probability of their [sic] being other men who could be the father. We are not dealing here with a previously chaste woman who has been tampered with by an experienced, older man. A pin cushion can be pierced by many pins, but who is to say which pin has pierced it the most? The facts that Mr. Rochelle dated and possibly had sexual relations with the mother at the time when she became pregnant and that, biologically, he could be the father are not sufficient to establish paternity by a preponderance of the evidence. State of Louisiana v. Wiggins, 409 So.2d 1264 (2d Cir.1982) [sic].” .
The plaintiff’s assignment of error presents the following issue for decision:
Was the trial court clearly wrong in rejecting the plaintiff’s demands based upon the defendant’s age, his uncorroborated testimony that the plaintiff was seeing two other men during the general time period of their singular sexual encounter and the fact that the plaintiff was the mother of two prior illegitimate children?
Finding filiation was proven, we reverse and order support.
LAW
“Illegitimate children are those who are conceived and born out of marriage.” *637 LSA-C.C. art. 180. “In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209.” LSA-C.C. art. 208. “A child not entitled to legitimate filiation ... must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided by this Article.” LSA-C.C. art. 209 A.
Filiation concerns the potential property rights of a child and proof of filiation establishes entitlement to support and heirship. Malek v. Yekani-Fard, 422 So.2d 1151 (La.1982). Innocent children should not suffer from the promiscuous adventures of their parents. Succession of Brown, 379 So.2d 1172 (La.App. 2d Cir. 1980), aff., 388 So.2d 1151 (La.1980); Cf., Malek v. Yekani-Fard, supra. The failure of a defendant to present evidence which would corroborate his testimony is a factor to be considered in determining whether filiation has been proven. Schwab For & On Behalf of Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th Cir.1985), writ den., 464 So.2d 1386 (La.1985), cert, den., — U.S. -, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985).
Where the alleged father presents no evidence other than his own testimony tending to disprove facts supporting the conclusion he is the father of the child, “The testimony of the mother, supported by the strong scientific evidence, creates a preponderance of evidence establishing the defendant is the biological father.” State Through Dept. of Health v. Rice, 482 So.2d 873 (La.App. 2d Cir.1986).
An appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the finding is not clearly wrong (manifestly erroneous). Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Issue: Was the trial court clearly wrong?

The trial court’s judgment rejecting the plaintiffs demands is founded upon the following factual findings:
1) the defendant’s age;
2) the probability that there were two other men who could have been the father based upon the defendant’s uncorroborated testimony and the fact that the plaintiff was the natural mother of two prior illegitimate children.
An analysis of each of these findings compels the conclusion that the judgment must be reversed.

1) the defendant’s age

The defendant testified that he was 56 years old at the time of the admitted sexual encounter with the plaintiff and that he has undergone no vasectomy or other medical procedure which would affect his ability to father a child. There was no evidence that the lovers used contraceptives. The defendant asserts no other justification for his alleged infertility other than he is “too old” to produce a child. He presents no authority whatsoever that his age, in and of itself, precludes the possibility that he could be the father of Juvante Turner.
The trial court was clearly wrong in taking into consideration the defendant’s age as a key factor in arriving at its decision.

2) the probability of other men being the father

The defendant asserted that there were two men whom the plaintiff was seeing at the time of his singular sexual encounter with the plaintiff and described one with particularity and testified that his brother had seen the other out with the plaintiff at a party. The defendant provided not one other witness to these vague contentions and he did not testify he had ever seen the plaintiff with another man during the period between June, 1979 and February, 1980. The record contains not one shred of evidence to support a finding of sexual relations between plaintiff and any man other than the defendant during *638 that time frame. It is very significant that the defendant presented none of these individuals as witnesses even though he had four years to prepare for the filiation suit.
The reasons for judgment establish that the trial judge considered the lack of moral character of appellant as a substantial basis for denying the filiation of plaintiffs son with the defendant. This conclusion is mandated by his comparison of the appellant to a pin cushion and his references to her two prior illegitimate children. The past indiscretions of the appellant should not penalize her son in this paternity suit unless there is some relevancy between appellant’s past bad conduct and the issues here presented. The fact the appellant had two children out of wedlock over six years before the facts upon which this suit is based has no relevancy to the issues here presented. The pin cushion example contained in the reasons for judgment is totally unsupported by any evidence as not even the defendant suggested the plaintiff was having sexual intercourse with any other man during the time frame of the conception of Juvante. We have earlier pointed out that the defendant’s testimony that plaintiff was seeing two other men was totally uncorroborated whereas the plaintiff and two other witnesses living in an adjoining apartment testified she was seeing no man other than the defendant between June, 1979 and February, 1980.
The defendant’s testimony that he did not date the plaintiff is in direct conflict with the testimony of Joyce Cogburn and Cogburn’s daughter. They corroborated plaintiff’s testimony that defendant was at the plaintiff’s residence “all the time.” Cogburn testified the sexual episodes of plaintiff and defendant were frequent. Joyce Cogburn testified she had personally observed the defendant having sexual relations with the plaintiff on one occasion in late August or early September, 1979, some one month before the defendant’s admitted sexual encounter in the latter part of September of 1979. She testified that she frequently heard sounds through a thin bedroom wall which caused her to believe sexual intercourse was taking place between plaintiff and defendant. These sounds included bed noises and expressions of endearment between plaintiff and defendant.
The case of State v. Wiggins, supra, relied upon by the trial court involved a situation where the mother had dated men other than the defendant during the time of conception whereas the great preponderance of evidence in the case here presented is that the plaintiff had sexual relations with no man except the defendant during the time of conception.
Arceneaux v. Domingue, supra, requires the conclusion that the unsupported testimony of the defendant, contradicted by all the other evidence, cannot support the trial court judgment and that it is clearly wrong. The blood test, along with the testimony of plaintiff and her witnesses, establishes by a preponderance of evidence that the defendant is the father of Juvante Turner.
The plaintiff filed an affidavit reflecting the cost of support for Juvante to be the sum of $125.00 which was based upon expenditures from welfare funds and food stamps. The expense items reflected on the affidavit are conservative and plaintiff actually seeks a sum in excess of $300.00 per month. The income and expense affidavit of the defendant filed in the record reflects a net income of $682.48 with expenses of $732.40. We conclude that the minimum amount needed by the child as $125.00 and that the defendant has the ability to pay this amount and no more.
We reverse and set aside the trial court judgment.
We find Juvante Turner to be the biological child of Arthur Rochelle and award monthly child support commencing March 13, 1981, in the amount of $125.00 per month in favor of Vivian Marie Turner and against Arthur Rochelle.
All costs in the trial court and on appeal are assessed against the defendant.

. § 396. Authority for test
Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desa-veu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.

. The plaintiff testified that she had a normal term pregnancy and that conception occurred in October of 1979. The defendant admitted that he had sexual relations with the plaintiff in the latter part of September. The normal gestation period for a pregnancy is 270-290 days. Broughton v. T.S.C. Motors Freight Lines, 200 La. 421, 8 So.2d 76 (1942). As the child was born on July 11, 1980, this establishes a time period of probable conception from September 26, 1979 — October 16, 1979, with the earlier date being at the approximate time of defendant’s admitted sexual encounter with the plaintiff.