Hershell Belmont MURRAY, Movant,

v.

Florence MURRAY et al., Respondents.

Supreme Court of Kentucky.

Jan. 31, 1978.

William L. Montague, Stoll, Keenon & Park, Lexington, for movant.

William A. Johnson, Johnson & Johnson, Stephen H. Johnson, Paintsville, for respondents.

CLAYTON, Justice.

This appeal represents the culmination of nearly 10 years of litigation over the right of Hershell Belmont Murray, the natural but illegitimate son of the late Dr. Hershell B. Murray, to share in his father's estate by virtue of either KRS 394.400 or 394.410, two of the so-called anti-lapse statutes.

The setting within which this controversy arose is as follows. Dr. Murray, a Morgan County physician, was killed in a boating accident on May 21, 1967. On April 22, 1968, Dr. Murray's last will and testament was admitted to probate in the Morgan County Court. The will, dated December 26, 1944, reads in its entirety as follows:

All of my estate I devise and bequeath One-Half to Fred Murray and Lula B. Murray (Father & Mother), the other Half to Mrs. Florence B. Murray (Wife) for their own use and benefit forever, and I hereby appoint them my executors without bond, with full power to sell, mortgage, lease, or in any other way dispose of the whole or any part of my estate.

---

1. Originally an appeal from the order of the Morgan County Court admitting the will to probate, the suit was converted by stipulation of all parties concerned into a declaratory judgment action (KRS 418.040) in March of 1972.
2. Hershell asserts, and we think properly so, that both KRS 394.400 and 394.410 are equally applicable in the case at bar. The terms "issue" and "descendants" as used in the respective statutes both refer to lineal descendants of

Fred Murray predeceased his son in 1955, leaving Dr. Murray as his sole surviving child. Dr. Murray was in turn survived at his death by three children—Jane Duncan Murray and Judith Ann Murray, his adopted daughters, and Hershell.

On July 26, 1968, Hershell instituted this action in the Morgan Circuit Court[1] against Florence Murray (named individually, as administratrix, and as guardian of the two adopted children), Lula Murray, Jane, and Judith, asserting that he is entitled to participate in the distribution of Dr. Murray's estate under the provisions of either KRS 394.400 or 394.410,[2] which read, at the time of Dr. Murray's death, as follows:

KRS 394.400:

If a devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will.

KRS 394.410:

(1) When a devise is made to several as a class or as tenants in common, or as joint tenants, and one or more of the devisees die before the testator, and another or others survive the testator, the share or shares of such as so die shall go to his or their descendants, if any; if none, to the surviving devisees, unless a different disposition is made by the devisor.

(2) A devise to children embraces grandchildren when there are no children, and no other construction will give effect to the devise.[3]

---

the devisee or legatee only, and do not encompass collateral or ascending relations. *Compare Schmidt v. Halpin*, Ky., 351 S.W.2d 57 (1961), *with Holloway v. Brown*, 181 Ky. 716, 205 S.W. 925 (1918).

3. The words "or as joint tenants" have since been deleted from subsection (1), and a new subsection (3) has since been added, by amendment effective March 25, 1972. *See* Ky.Acts, 1972, Ch. 168, § 14, p. 711.

After some six years of procedural sparring, the trial court eventually determined that Hershell is an illegitimate child and is thereby precluded from sharing in Dr. Murray's estate by KRS 391.090(2), which provides that "a bastard shall inherit only from his mother and his mother's kindred." On February 28, 1974, judgment was entered dismissing the suit.

Hershell appealed to this court on March 26, 1976; on October 8 of that year we transferred the case to the then newly created Court of Appeals, which subsequently affirmed the judgment of the trial court in an opinion reported at 549 S.W.2d 839 (1977). We granted discretionary review on May 17, 1977, to determine the issues raised. We reverse.

The determination by the Court of Appeals that Hershell is not entitled to share in Dr. Murray's estate was based on two grounds, the first being that KRS 391.-090(2) prohibits an illegitimate from taking under KRS 394.400 or 394.410 a devise which was originally made to his father or his father's kindred. At the time the court rendered its opinion, this was certainly a correct interpretation of the law; for it has long been the rule in this jurisdiction that whether or not an illegitimate is eligible to take under the anti-lapse statutes does indeed depend on whether or not that illegitimate would be eligible to inherit under the laws of intestate succession. *Cherry v. Mitchell*, 108 Ky. 1, 55 S.W. 689 (1900). On April 26, 1977, barely two months after the Court of Appeals rendered its decision, however, the United States Supreme Court handed down *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), in which an Illinois bastardy statute similar to KRS 391.090 was struck down as violative of the Equal Protection Clause of the Fourteenth Amendment. On October 7, we followed suit and declared KRS 391.090(2) to be unconstitutional, *Pendleton v. Pendleton*, Ky., 560 S.W.2d 538, *rev'g* 531 S.W.2d 507 (1977), applying our ruling to all cases in which the issue had been raised and a final mandate had not been issued as of the date

of the *Trimble* decision. *Pendleton*, 560 S.W.2d 538, *as modified on rehearing* (Jan. 10, 1978). Inasmuch as the specific constitutional issue had been raised in this case and it was still in litigation on April 26, 1977, it is clear that Hershell can no longer be precluded from sharing in his father's estate solely because of his status as an illegitimate.

The second ground upon which the Court of Appeals relied in denying Hershell the right to recover under the anti-lapse statutes was that Dr. Murray made a "different disposition" of that part of his estate originally devised to Fred: not in the usual sense of naming someone to take Fred's share in the event that Fred should predecease him, but rather in the most unusual sense of specifying that regardless of who else might be designated by statute to take Fred's portion of the estate, he did not want Hershell to recover. The court found this intention to disinherit Hershell in Dr. Murray's failure to name Hershell as a devisee in his will when the will was written, apparently reasoning that if Dr. Murray did not want Hershell to take at that time, he likewise would not have wanted Hershell to take in the event that the devise to Fred became incapable of taking effect.

Respondents endorse this reasoning and point to Dr. Murray's failure either to change his will or to legitimize Hershell upon Fred's death as additional proof of Dr. Murray's intention to disinherit Hershell. They argue that Dr. Murray must be presumed to have known the manner in which Kentucky law would dispose, at his own death, of that portion of his estate originally devised to Fred—including the fact that KRS 391.090(2) would prohibit Hershell from taking—and that Dr. Murray's failure to change his will or to legitimize Hershell upon Fred's death demonstrates his approval of such a disposition.

While we do not question the fact that a negative "different disposition" of the kind suggested above would be, if properly manifested, every bit as valid as the

affirmative type ordinarily utilized, we cannot agree that the cited instances of inaction on Dr. Murray's part qualify as such in the instant case. It is our opinion that in order to constitute a "different disposition" as that term is used in the anti-lapse statutes, the intention of the testator must be expressed in the will itself. This is clearly the case with respect to KRS 394.400, which states that the statutory distribution controls "unless a different disposition thereof is made or required *by the will*." (Emphasis added.) *See Nance's Ex'rs v. Akers*, 165 Ky. 461, 177 S.W. 235, 236 (1915). And although KRS 394.410 provides only that a different disposition must be made "by the devisor," we think this clause also contemplates an expression of contrary intent in the will. Any other construction would destroy the harmony of the anti-lapse scheme as a whole[4] by creating inconsistencies in cases like the present one.

■ It should be noted that even if we were willing to consider matters outside the four corners of the will as indicative of Dr. Murray's intent, we simply do not agree with either the Court of Appeals or respondents that the cited inactions on Dr. Murray's part point unerringly to the conclusion that Dr. Murray intended to disinherit Hershell in the event that the devise to Fred became incapable of taking effect. We fail to understand how Dr. Murray's failure to name Hershell as a devisee at the time the will was written has any probative value whatsoever in determining whom Dr. Murray did or did not desire to take Fred's share upon Fred's death. Nor do we think it necessarily safe to assume either that Dr. Murray was aware of, or that he approved of, the anti-lapse and bastardy statutes. As stated by the United States Supreme Court, "[e]ven if one assumed that a majority of the citizens of the state preferred to discriminate against their illegitimate children, the sentiment hardly would be unanimous. *With respect to any individual, the argument of knowledge and approval of the*

state law is sheer fiction." *Trimble, supra,* 97 S.Ct. at 1467, n. 16 (emphasis added). Perhaps Dr. Murray was familiar with the law and purposely did not change his will or legitimize Hershell because he intended only for Jane and Judith to recover the devise to Fred; but perhaps he knew nothing of the law and simply did not bother to change his will or legitimize Hershell because he assumed Fred's share would go to Lula. The plain fact is, we simply do not know.

■ In the absence of a "different disposition" in Dr. Murray's will, the property originally devised to Fred must pass under KRS 394.400 or 394.410 to Fred's "issue" or "descendants." Hershell, as Fred's natural grandson, and Jane and Judith, as Fred's adoptive granddaughters, *see* KRS 199.520, all clearly qualify under either statute and are accordingly each entitled to one-third of the share devised to Fred, or one-twelfth of Dr. Murray's estate.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

All concur except STEPHENSON, J., who dissents.

---

4. *See also* KRS 394.500 (1976 Supp.), which provides that "[u]nless a contrary intention appears *from the will*, real or personal estate, comprised in a devise or bequest incapable of taking effect, shall be included in the residuary devise contained in the will." (Emphasis added.)