426 So.2d 585 (1982)
SUCCESSION OF Viola Alexander CLIVENS.
No. 82-C-0125.
Supreme Court of Louisiana.
July 2, 1982.
On Rehearing January 10, 1983.
Rehearing Denied February 11, 1983.
Additional Reasons for Denying Rehearing February 17, 1983.
*586 Nils R. Douglas, John A. Hollister, McNulty, OConnor, Stakelum & Anderson, New Orleans, for applicant.
Roger R. Roy, Franklin V. Endom, Jr., Polack, Rosenberg, Rittenberg & Endom, New Orleans, for respondents.
WATSON, Justice.
The issues are:
(1) Should the decision in Succession of Brown[1] be retrospective or prospective?
(2) If prospective, from what date?[2] and,
(3) What exceptions should be made to a prospective application to preserve the rights of litigants similarly situated to those in Brown?
George Clivens died on September 24, 1971. His widow, Viola Alexander Clivens, received a judgment giving her possession of his estate on December 17, 1974. The widow died October 19, 1978, leaving collateral relatives but no children. A sister was appointed administratrix of the succession. Dorothy Clivens Joseph Vantress, born June 18, 1928, intervened in the succession on July 20, 1979, contending that she was the acknowledged illegitimate daughter of George Clivens and entitled to his half of the estate. The trial court sustained an exception of no cause of action to the intervention. The court of appeal affirmed the trial court judgment, holding that Succession of Brown should be applied prospectively from its September 3, 1980, date. Succession of Clivens, 406 So.2d 790 (La. App. 4 Cir.1981). The court relied on its earlier decision in Succession of Ross, 397 So.2d 830 (La.App. 4 Cir.1981). A writ was granted to review the judgment. 411 So.2d 47 (La., 1982).
Succession of Brown, supra, held that Civil Code art. 919[3] denied equal protection to illegitimates in violation of Art. 1, § 3 of the 1974 Louisiana Constitution and the United States Constitution. Brown followed Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Trimble held that an illegitimate who has proven filiation must have the same status as a legitimate heir in a state's intestate succession law.[4]Brown has been applied retroactively. See Succession of Richardson, 392 So.2d 105 (La.App. 1 Cir.1980), writ denied 396 So.2d 1324 (La.1981).
New case law has traditionally had retroactive effect, but retroaction is not required by the United States Constitution. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[5] The states are free to limit the retroactivity of their civil decisional law. Sunburst Oil & Refining Co. v. Great Northern Railway, 91 Mont. 216, 7 P.2d 927 (1932), affirmed 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). Legislation usually has only prospective effect. LSAC.C. art. 8 provides:

*587 "A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."
In the judicial area, "[P]rospective overruling is a simple matter of facing up to the reality that things change, even fundamental things, and effecting change in a deliberate and rational manner rather than pretending that things were always the way they are now." 51 Va.L.Rev. 204. Generally, unless a decision specifies otherwise, it is given both retrospective and prospective effect.[6] See Peterson v. Superior Court of Ventura County, 31 Cal.3d 147, 181 Cal. Rptr. 784, 642 P.2d 1305 (1982).
Two competing interests are involved: (1) the property rights which have been acquired on the basis of the laws denying inheritance rights to illegitimates; and, (2) the unequal treatment that prospective application of Brown will cause to those illegitimates in the same situation as the Brown plaintiffs. These interests must be weighed to decide whether "the hardship on a party who has relied on the old rule outweighs the hardship on the party denied the benefit of the new rule." 28 Hastings Law Journal 561.
Judicial decisions are denied retroactive effect either to protect people who have relied on the former law and/or to preserve stability in an area where stability is of particular importance. Brown overruled a Civil Code article upon which individuals had relied for generations. Legitimate children have been placed into possession of estates, sold, mortgaged and, in some cases, dissipated them. Substantial uncertainty and confusion would result if those who have relied to their detriment on prior law became subject to the claims of illegitimate heirs. However, with intestate successions, the element of detrimental reliance is generally present only as to third parties. Brown mandates vast changes in estate and property ownership. The importance of stability in land titles and the reliance on the former law in property transactions favor prospective application.[7]
Weighing against these factors is the unequal treatment which has been afforded illegitimates disinherited by operation of C.C. art. 919. Where there has been infringement of constitutional rights, a beneficent rule righting the wrong should generally be retroactive.
Lovell v. Lovell, 378 So.2d 418 (La., 1979) declared C.C. art. 160 unconstitutional but held that the decision was not retroactive. However, the rights involved in Lovell were less fundamental than those here. Lovell relied on Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Chevron holds that a decision should be applied prospectively when: (1) there is a new principle of law not foreshadowed by past cases; (2) the purpose of the new rule is promoted; and (3) injustice or hardship will result from retroactivity.
In Gross v. Harris, 664 F.2d 667 (8th Cir.1981) the court considered the criteria in Chevron with respect to Trimble. The court stated:
"In applying this test to the instant appeals we observe that the first element of the Chevron test is present, because Trimble was not foreshadowed by previous Supreme Court decisions. Indeed, the prior decisions in Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976) and Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), would appear to have indicated that a contrary result might be reached in Trimble." 664 F.2d 671.
Here, the resolution in Succession of Brown was certainly foreshadowed by the decision in Trimble. Therefore, the first element of the Chevron test is not present.
*588 The court in Gross found the second element of Chevron missing:
"... It is self evident that the purpose of the Trimble decision was to prevent constitutionally impermissible discrimination against illegitimates. Retrospective application of Trimble would thus further the Trimble purpose. See Jimenez v. Weinberger, 523 F.2d 689, 703 (7th Cir. 1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976)." 664 F.2d at 671.
Similarly, retrospective application of Brown would further the Brown purpose of preventing discrimination against illegitimates. Judge Schott's dissenting opinion in the Court of Appeal correctly analyzed this point:
"The purpose of the rule announced in Succession of Brown, supra was to remove the unconstitutional discrimination against illegitimates imposed by C.C. Art. 919. Among the rights of legitimate children, of which acknowledged illegitimates were deprived by Art. 919, was the right to assert a claim as an heir long after a judgment of possession was rendered, C.C. Art. 1030. By refusing to apply the rule of Succession of Brown retroactively, the primary purpose of the decision, i.e., putting an end to the discrimination against acknowledged illegitimates, is defeated. Thus, I have concluded that a consideration of the second factor of the Chevron Oil Company case dictates the opposite conclusion than that reached by my colleagues in Succession of Ross." 406 So.2d at 792.
Third, the Gross court found no impermissible injustice or hardship from a limited retroactive application of Trimble. Finding two of the three elements favoring prospectivity not present, the Gross court made a limited retrospective application of Trimble. Here, if claims against third parties and testate successions are excluded, no impermissible hardship will result from retroactive application of Brown. Thus, unlike Lovell, all three Chevron factors favor limited retroactivity.
Brown affects not only Civil Code article 919, but other articles governing Louisiana successions. Because of the far reaching effect of the decision and the uncertainty it has engendered in many areas, it is essential that its complete implementation be prospective. This does not, however, prevent certain limited retroactive exceptions. A new rule "may be retrospective, partially retrospective, or prospective." Myers v. Drozda, 180 Neb. 183, 141 N.W.2d 852 at 854 (1966). "Definitions of past transactions to which a new rule applies may ... vary in detail." Aldisert, The Judicial Process, "Prospectivity or Retrospectivity?", at page 900.
The rights of third parties can be fully protected if Brown is made prospective as to all third parties' interests. Third parties are governed by the declared law at the time they acquired their interests. Lyons v. Veith, 170 La. 915, 129 So. 528 (1930).
Limiting the retroactive effect of Brown to rights against coheirs in intestate successions would best balance the equities involved. An heir who has acquired title through the law regulating intestate successions must yield to a later interpretation of that law. 47 Harvard Law Review 1409. See Pierce v. Pierce, 46 Ind. 86 (1874) and Jackson v. Harris, 43 F.2d 513 (10 Cir.1930). Hence, Brown will be retroactive as to coheirs in intestate successions and prospective as to third parties and testate successions. This is consistent with Trimble, which concerns intestate successions.
Since Brown relied on the Louisiana Constitution, it is arguable that it should be prospective from the Constitution's effective date. However, it is doubtful that the constitutional provision prohibiting discrimination on the basis of birth was intended to apply to inheritance by illegitimates. The equal protection guarantee in the Louisiana Constitution "... is probably best understood in light of the federal equal protection analysis which provided the background for the debate." 35 La.L.Rev. 8.[8] *589 The debate indicates that the language of the article, although more specific than the federal, was intended to embody federal constitutional standards. Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288, rehearing denied 402 U.S. 990, 91 S.Ct. 1672, 29 L.Ed.2d 156 (1971) held that Louisiana Civil Code article 919 did not violate constitutional guarantees. Trimble, which cast doubt on Labine, was decided after January 1, 1975, the effective date of the Louisiana Constitution of 1974. Thus, the federal jurisprudence relating to illegitimates at the time indicates the Louisiana constitutional provision did not necessarily envision inheritance rights by illegitimates. The effective date of the Louisiana Constitution of 1974 would not be appropriate as a point of demarcation between prospective and retroactive application of Brown. Also, since Trimble did not specifically overrule Labine, Trimble's date is inappropriate. See 42 La.L.Rev. 468.
When a judgment of a court changes a rule, "the date of that opinion is the crucial date". Linkletter v. Walker, supra, 381 U.S. at 639, 85 S.Ct. 1743, 14 L.Ed.2d at 614 (1965). Therefore, the prospective full implementation of Brown applies to causes of action arising after its decision date of September 3, 1980.
Prior to September 3, 1980, acknowledged illegitimates or those who have proven filiation do not have the status of forced heirs in testate succession. Any claims against third parties by illegitimates based on Brown arising before that date are barred. In the interest of preserving the stability of land titles, all third parties are protected. Transferees, mortgagees, and succession debtors who acted in good faith reliance on the prior law are not subject to retroactive claims by illegitimates.
An acknowledged illegitimate or one who proves filiation has, under Brown, the same rights as a legal heir. However, those rights are only partially retroactive. Retroactive claims against third parties and testate successions are precluded. In the interest of justice and equal treatment, Brown is to be retroactive in intestate successions where the rights of third parties are not involved.
Plaintiff's claim is not barred. Her suit has never been considered, much less decided. Were she a legitimate heir, her suit would not have prescribed. A succession judgment of possession is subject to amendment. Since plaintiff is alleged to be an acknowledged illegitimate, the problem of proving filiation apparently does not arise. LSA-C.C. art. 203.[9] Act 549 of 1980[10] appears inapplicable.
*590 An acknowledged illegitimate, like plaintiff, whose rights have not previously been litigated, can assert those rights against other heirs in an intestate succession. Any inheritance claims of plaintiff lie solely against her father's other heir, his wife. Since the estate of the wife is intact, under administration, plaintiff retains a cause of action against that estate.[11]
For the foregoing reasons, the judgment is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
MARCUS and DENNIS, JJ., dissent and assign reasons.
CALOGERO, J., dissents for reasons assigned by DENNIS, J.
MARCUS, Justice (dissenting).
I do not consider that Succession of Brown should be applied retroactively to co-heirs in intestate successions. In my view, Succession of Brown should only be applied prospectively from September 3, 1980, the date the decision was rendered. Hence, plaintiff's claim in the instant case would be barred. Accordingly, I respectfully dissent.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority opinion declares that article 919 of the Civil Code never existed for some illegitimates, yet governed for over a hundred years for others. At the same time, my brethren have simply disregarded the deliberate mandates of our state constitution and the recent jurisprudence of this Court to devise their own rules regulating the property rights of illegitimates.
The majority opinion ignores the clear words of our state charter and previous *591 decisions of this court in assuming that Article 1, § 3 of our 1974 constitution merely codifies federal jurisprudence. Article 1, § 3 of our state constitution prohibits laws which "unreasonably discriminate against a person because of [his] birth * * *." In the constitutional debates, both proponents and opponents of the provision noted that it included within its scope unreasonable discrimination against persons because of illegitimacy.[1]Succession of Robins, 349 So.2d 276 (La.1977). After a previous review of the proceedings of the convention, this Court rejected the argument that the provision was aimed only at discrimination in aid to dependent children programs, and held that "the entire range of discriminatory practices based on illegitimacy was encompassed by the section." Succession of Thompson, 367 So.2d 796, 798 (La.1979). The holding that "[t]he members of the constitutional convention intended this article to include within its scope unreasonable discrimination based upon illegitimacy" was reaffirmed by a five member majority of this Court last term. Succession of Brown, 388 So.2d 1151 (La.1980).
The majority is mistaken in concluding that the effective date of our state constitution is not an appropriate point of demarcation in the existence of Article 919 of the Civil Code. In Succession of Brown, supra, a five member majority of this present court during its 1980-81 term held that Article 919 of the Civil Code, which denies inheritance rights to acknowledged illegitimates in the succession of a father who is survived by other relatives, conflicts with Article 1, § 3 of our state constitution because it arbitrarily, capriciously or unreasonably discriminates against a person because of his birth. Since laws which were in conflict with the 1974 Louisiana Constitution ceased upon its effective date, Article 919 was repealed at midnight on December 31, 1974. La. Const.1974, art. 14 §§ 18(B), 35.
This court has on at least two other occasions construed Article 14 § 18(B) of the constitution to repeal statutes in conflict with the constitution upon its effective date. State v. James, 329 So.2d 713 (La. 1976); Civil Service Commission of N.O. v. Foti, 349 So.2d 305 (La.1977). The constitutional history of Article 14 § 18(B) which was first placed in a Louisiana constitution to automatically repeal Reconstruction legislation, indicates that it means what it says and that laws in conflict with self executing provisions of the new constitution are thereby repealed. E.S. Smith, "If Words Mean What They Say," unpublished manuscript, Louisiana Constitutional Law Seminar, L.S.U. Law Center (1981); Vol. IX Records of La. Const. of 1973; Convention Manuscripts p. 3484, T.J. Kernan, The Constitutional Convention of 1898 and its Work, Report to the La. Bar Assn., 1898, 1899, p. 55. Article 1, § 3, which prohibits discriminatory laws based on a person's birth, is clear, express and self executing, and this court should hold that Article 919 of the Civil Code ceased upon its effective date of December 31, 1974 at midnight.
On the other hand, except as otherwise specifically provided in the constitution, the constitution is not retroactive and does not create any right which did not exist under the constitution of 1921 based upon actions or matters occurring prior to the effective date of the 1974 constitution. Id. art. 14, § 26. Since there is no specific provision to the contrary in the 1974 constitution, and since the 1921 constitution did not prohibit laws which discriminate on the basis of birth, Article 919 was valid and effective insofar as state constitutional law is concerned until its repeal or cessation at midnight on December 31, 1974 as to matters or actions accruing prior to that date.
The intervenor's cause of action, which arose upon the death of her father on September 24, 1971, is a matter or action which occurred before the 1974 constitution's effective date. Accordingly, the 1974 constitution did not prevent the application of Act 919 of the Civil Code to it. Since Article 919 excludes acknowledged illegitimates *592 from participating in the succession of their father when he is survived by a spouse, it effectively barred intervenor's action unless it was invalid under the federal constitution at the time the action arose.
The United States Supreme Court, on March 29, 1971, held that there is "nothing in the vague generalities of the Equal Protection and Due Process Clauses which empower this court to nullify the deliberate choices of the elected representatives of the people of Louisiana" in enacting Article 919 of the Civil Code. Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). Petition for rehearing was denied May 17, 1971, 402 U.S. 990, 91 S.Ct. 1672, 29 L.Ed.2d 156 (1971). In rejecting the attack on Article 919, the high court recognized that the "power to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property" is committed to the state legislature. Id. 401 U.S. at 538, 91 S.Ct. at 1021. It was not until April 26, 1977 in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), that the Supreme Court clearly adopted a different analysis with respect to illegitimates' property rights. The court held that Illinois' distinction between legitimate and illegitimate children for purposes of intestate successions could not be justified on the bases of the state's interest in promoting legitimate family relationships or the state's interest in establishing a method of property disposition, but it did not expressly overrule Labine or make its decision in Trimble specifically retrospective. Instead, it merely recognized that Labine "is difficult to place in the pattern of this Court's equal protection decisions, and subsequent cases have limited its force as a precedent." Id. n. 12.
George Clivens died on September 24, 1971 some four months after Labine became final and over five and one-half years before Trimble was decided. During the interim Louisiana adopted its 1974 constitution which specifically prohibits discrimination on the basis of birth. Thus, Louisiana reformulated its basic view of the rights of illegitimates during the same period that the Supreme Court recast its own analysis. In Trimble the high court saw its judicial task as "one of vindicating constitutional rights without interfering unduly with the State's primary responsibility in this area." Id. 430 U.S. at 771, 97 S.Ct. at 1465. Consequently, since Louisiana actually anticipated the Supreme Court in fulfilling its responsibility, I do not think that Trimble compels us to declare Article 919 unconstitutional as of a date earlier than our own 1974 constitution.
Certainly the expressions of Trimble, which at least one member of the court now considers to be a "derelict," Lalli v. Lalli, 439 U.S. 259, 277, 99 S.Ct. 518, 529, 58 L.Ed.2d 503, 516 (1978) (Blackmun, J., concurring), do not require us to make the United States Supreme Court rulings retroactive as to a succession opened in 1971 a few months after its decision in Labine, and much less do they require absolute retroactivity as the majority opinion dictates. All other state supreme courts which have considered the issue have applied Trimble prospectively, although some have given it limited retroactivity to actions pending at the time the state case or Trimble was decided. See cases cited in the majority opinion at fn. 4.
In addition to there being no necessity for an absolute retrospective declaration of Article 919's unconstitutionality, the majority opinion's disparate treatment of illegitimates according to whether their parent's property is in the possession of an intestate or testate succession, or a third party raises further equal protection questions. A plurality of the United States Supreme Court in Lalli v. Lalli, supra, approved a carefully considered procedural statute which seeks to grant to illegitimates insofar as practicable rights of inheritance on a par with those enjoyed by legitimate children while protecting the important state interest in the just and orderly disposition of decedents' estates. The Louisiana legislature has already adopted similar procedural legislation designed to further these purposes. The majority opinion goes much further and completely excludes the substantive rights of certain illegitimates to claim under their *593 parents' estates. This was the feature of the Illinois statute declared unconstitutional in Trimble which distinguished it from the New York law, i.e., "[T]he Illinois statute was constitutionally unacceptable because it effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents. The reach of the statute was far in excess of its justifiable purposes." Lalli, 439 U.S. at 273, 99 S.Ct. at 527. Because of our statutory law establishing procedural safeguards, the majority's disparate retroactivity rule reaches far in excess of its justifiable purposes and will fall unfairly and unequally upon illegitimates according to the situations in which they find themselves.
For all of these reasons, I believe the more just and legally justifiable solution to the problems presented by the expansion of illegitimates' property rights in Louisiana is to adhere to the rule of our state constitution under which Article 919 of the Civil Code regulated the inheritance of natural children from their natural fathers until the article ceased to exist on the effective date of the 1974 Louisiana Constitution.

On Rehearing
CALOGERO, Justice.
Louisiana Civil Code article 919, enacted in 1908, and repealed in 1981, barred illegitimate children from inheriting from their natural fathers in the same manner as legitimate children. In Succession of Brown, 388 So.2d 1151 (La.1980), we affirmed a Court of Appeal judgment holding that La. C.C. art. 919 was unconstitutional. On original hearing in the present case, we held that Succession of Brown would be applied retroactively as to co-heirs in intestate successions, and prospectively from the date of its rendition, September 3, 1980, in testate successions and as to third parties. We were prompted to grant this rehearing by the argument, among others, that our original opinion creates more problems than it solves.
The issue, whether Brown should be applied retroactively, and if so, to what extent, arises essentially in the following context. The acknowledged illegitimate daughter of George Clivens, one Dorothy Clivens Vantress, brought an action against her father's widow, Viola Alexander Clivens, who had been placed in possession of George Clivens' property after his September 24, 1971 death.[1] Vantress contends that she is legally entitled to the property because she was her father's sole descendant.
The trial court sustained an exception of no cause of action to Vantress' claim and the Court of Appeal affirmed that ruling, holding that Succession of Brown should be applied prospectively only from the date of its rendition.
After reversing the Court of Appeal on original hearing we granted this rehearing because of concern over the following arguments: (1) unlimited retroactive application of Brown as against co-heirs in intestate successions would work a substantial injustice, especially in cases from years past where the heir has either already disposed of his inheritance or relied on his ownership of the property to his detriment; (2) the disparate treatment between testate and intestate successions has no reasonable basis. Denial of an heir's forced portion (which is constitutionally provided, La. Const. art. XII, § 5) is no less discriminating than denial of heirship rights in intestate successions; (3) future determinations of just who are "third parties" is problematic, extending rather than shortening the disruptive effect on land titles. And allowing the legal heir/vendor to be called to account for the proceeds of a sale of his ancestor's property (a distinct possibility under the original opinion) imposes the same inequitable considerations that exist in unlimited retroactive application of Brown in intestate successions; and (4) the combined effect of these problems is that the state's interest in quieting or minimizing *594 disruptive land title disputes is hindered rather than furthered by such a resolution of the retroactivity issue.
For the reasons which follow, we now hold that Succession of Brown, holding La.C.C. art. 919 unconstitutional, is to be applied retroactively, as relates to testate as well as intestate successions, to January 1, 1975, the effective date of the Louisiana Constitution of 1974, as well as prospectively.
Sydney Brown died intestate on January 1, 1978. He was survived by four acknowledged illegitimate children and one adopted child. In the succession proceedings a judgment of possession was rendered in favor of the adopted child. His illegitimate children brought suit to have the judgment of possession annulled. The trial court, following La.C.C. art. 919, ruled against the illegitimate children, refusing to nullify the judgment of possession.[2]
In affirming the Court of Appeal judgment, we held that La.C.C. art. 919 was unconstitutional in that it unreasonably discriminated against illegitimate children by denying them the same inheritance rights in the successions of their fathers, under any circumstances, as was enjoyed by their legitimate counterparts. In doing so, we relied upon the United States Supreme Court case of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), and Article I, Section 3 of the Louisiana Constitution of 1974.
The question of whether the decision in Succession of Brown would be applied retroactively was left unanswered in that opinion.[3] The dispute in this litigation requires that that question now be answered.
As correctly pointed out in our opinion on original hearing, generally, unless a decision specifies otherwise, it is to be given prospective and retroactive effect. However, retroactivity is not constitutionally required and states are free to limit the retroactivity of their civil decisional law when necessary or advisable. We have previously held that "where a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the `injustice or hardship' by a holding of nonretroactivity. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969)." Lovell v. Lovell, 378 So.2d 418 (La.1979). The United States Supreme Court itself described its task in Trimble as "one of vindicating constitutional rights without interfering unduly with the State's primary responsibility in this area." Trimble v. Gordon, 430 U.S. at 771, 97 S.Ct. at 1465. Consequently we must weigh and balance the competing interests involved. The vindication of the illegitimate child's constitutional right to inherit from his natural parents in the same manner as his legitimate siblings must be weighed against inequities which might result from affording them an ownership interest, and against the state's interest in maintaining the stability of land titles.
In Lovell v. Lovell, supra, this Court, relying on Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), noted the factors which should be considered in determining whether a decision should be made nonretroactive. We stated:
(1) the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits must be weighed in each case by looking to the prior history of the rule in question, *595 its purpose and effect and whether retrospective application will further or retard its operation; and (3) the inequity imposed by retroactive application must be weighed.
We will consider these three factors in light of the Louisiana constitutional provision upon which we relied in Succession of Brown to find that La.C.C. art. 919 was unconstitutional.
Article I, Section 3 of the Louisiana Constitution, adopted by the people of Louisiana in 1974 and effective January 1, 1975 provides in pertinent part:
No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth ....
As noted in Brown, in the constitutional debates over this provision, both proponents and opponents noted that it included within its scope unreasonable discrimination against a person because of illegitimacy.[4]Succession of Thompson, 367 So.2d 796 (La. 1979); Succession of Robins, 349 So.2d 276 (La.1977). We have previously spoken on the meaning of this constitutional provision. After reviewing the proceedings of the convention, we determined that "the entire range of discriminatory practices based on illegitimacy was encompassed by the section." Succession of Thompson, supra.
Accordingly, in considering, under the Lovell-Chevron factors, whether the decision in Succession of Brown was one of first impression whose resolution was not clearly foreshadowed, we conclude that at a minimum it was clearly foreshadowed. Article I, Section 3 of the 1974 Constitution specifically prohibits arbitrary discrimination against a person because of birth. In our constitution, we intentionally went further in our expressions of equality for all persons, than is provided in the United States Constitution or in the 1921 Louisiana Constitution. To say now that the decision in Brown was not foreshadowed by the 1974 Louisiana Constitutional provision is to ignore its existence.
Furthermore, we have previously utilized this very provision to find unconstitutional other statutes which unreasonably discriminated against illegitimates. Succession of Thompson, supra; Succession of Robins, supra.[5] The provision, thus, has not been ignored. Rather, it has been consistently applied by this Court as intended, clearly foreshadowing the result reached in Brown.
As relates to the second prong of the Lovell-Chevron test, whether a holding of retroactive application will further or retard the purpose and effect of the rule fashioned in the judicial decision, we conclude that the retroactive application of Brown will surely further its holding, and a prospective application would just as surely retard it. As stated above, Brown held that La.C.C. art. 919 was unconstitutional under La. Const. art. I, § 3. To apply that holding only prospectively from the date of its rendition, September 3, 1980, is to ignore the constitutional proscription effective in the state since January 1, 1975.
The 1974 Constitution is a recent expression of the will of the people, and its operation and effect is only served by recognizing its provisions and enforcing them.
The holding in Brown, insofar as it relied on Article I, section 3 of the 1974 Constitution, was an acknowledgement of the rights *596 of illegitimates and an expression by the Court that arbitrary discrimination, as is implicit in La.C.C. art. 919, is constitutionally prohibited. Therefore, the purpose and effect of that holding can only be furthered by a retroactive application of the decision to the effective date of the constitution.
As pointed out in dissent by Judge Schott to the Court of Appeal opinion in this case (406 So.2d 790), we are not here confronted with the same considerations as were presented to the United States Supreme Court in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), wherein the Court was faced with the question of whether Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was to be applied retroactively. In Mapp, the Court had held that the exclusionary rule would be applicable to the states.[6] The primary purpose of the exclusionary rule was to deter lawless action. That purpose would clearly not be furthered by retroactive application to an act that had already taken place, nor would the purpose be retarded by only prospective application. Thus the Court in Linkletter chose to apply Mapp only prospectively. However, in the present case, the purpose of our ruling in Brown is to vindicate and recognize the constitutional rights of illegitimates. Thus, unlike Linkletter, that purpose is both furthered by a retroactive application and retarded by simply a prospective application.
Finally, we consider the third prong of the Lovell-Chevron test, the weighing of inequities which will result from a retroactive application. Primarily we are here concerned with the overall stability of land titles, as well as co-heirs who have relied on their ownership of property, perhaps to their detriment, and third parties who have bought property ignorant of the existence of illegitimates in successions forming part of the chain of title.
First, it must be pointed out that, because of prompt action by our Legislature in this area, instances in which land titles are likely to be adversely affected have been minimized. In fact, as will be discussed below, any actions by unacknowledged illegitimates to prove their filiation or any claims against third parties, made viable by a retroactive application of Succession of Brown, must have already been filed, or are now prescribed.
Cognizant of the Court of Appeal decision in Succession of Brown, holding that La. C.C. art. 919 was unconstitutional, and anticipating our affirming that decision, the Legislature passed Act No. 549 of 1980, amending Civil Code articles 208 and 209 on proof of filiation of unacknowledged illegitimates.
These articles were again amended by Act No. 720, of 1981 and La.C.C. art. 209 now provides in pertinent part as follows:
The proceedings required by this Article [proof of filiation] must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
* * * * * *
Section 2. Any person against whom the time period provided in this Act would otherwise have accrued except for the provisions of this Section shall have one year from its effective date to bring a proceeding to establish filiation of a child. If no such proceeding is timely instituted, such filiation may not thereafter be established.
The effective date of the provision was September 11, 1981. Thus unacknowledged illegitimate children who were otherwise prohibited from bringing an action to prove filiation by this statute, were given until September 11, 1982 to file such an action. If such a lawsuit has not been filed prior to *597 that date, "filiation may not thereafter be established." Therefore, the feared onslaught of endless claims that would be made if Succession of Brown is applied retroactively will not occur. For an unacknowledged illegitimate to gain the advantage of a retroactive application of Brown, he must have at least filed a lawsuit asserting his filiation on or prior to September 11, 1982. It is unlikely there exists a multitude of such pending lawsuits in our state court system. And in any event, all such live efforts to prove filiation are determinable.
As has been properly pointed out, the filiation amendments to articles 208 and 209 apply only to unacknowledged illegitimates. Acknowledged illegitimates are under no similar compulsion to sue within a time frame to establish filiation.
However, the Legislature also passed Act No. 721 of 1981, amending La.R.S. 9:5630, reducing from ten to two years the time within which a judgment of possession may be challenged once property passes into the hands of a "third person." La.R.S. 9:5630 provides:
A. An action by a person who is a successor of a deceased person, and who has not been recognized as such in the judgment of possession rendered by a court of competent jurisdiction, to assert an interest in an immovable formerly owned by the deceased, against a third person who has acquired an interest in the immovable by onerous title from a person recognized as an heir or legatee of the deceased in the judgment of possession, or his successors, is prescribed in two years from the date of the finality of the judgment of possession.
B. This Section established a liberative prescription, and shall be applied both retrospectively and prospectively; however, any person whose rights would be adversely affected by the passage of this Section, shall have one year from the effective date of this Section within which to assert the action described in Subsection A of this Section and if no such action is instituted within that time, such claims shall be forever barred.
C. "Third person" means a person other than one recognized as an heir or legatee of the deceased in the judgment of possession. (Emphasis provided)
The effective date of this provision was also September 11, 1981. Therefore, all third parties who have purchased property in reliance on prior judgments of possession and who would otherwise be adversely affected by a retroactive application of Succession of Brown are protected if no suit was filed before September 11, 1982.
In light of these two provisions, La.C.C. art. 209 and La.R.S. 9:5630, the argument that retroactive application of Succession of Brown will seriously disrupt land titles for a prolonged period of time has no merit. Any actions by unacknowledged illegitimates to establish their filiation or any claims against third parties, made viable by a retroactive application of Brown, must already have been filed, or they have prescribed. Additionally, if Brown is given only a limited retroactive application to January 1, 1975, the effective date of the 1974 Louisiana Constitution, the effects of the decision on co-heirs and third parties will be further minimized. Thus the combined effect of a limited retroactive application and the above statutory provisions, is to make it the rare case in which land titles will be upset.[7]
*598 Therefore, in weighing the possible inequities of retroactive application against the need to recognize and vindicate the illegitimate's constitutional rights, it appears that a limited retroactive application of Succession of Brown to the effective date of the new constitution, January 1, 1975, best strikes the balance between these competing interests.
It has been argued that the Legislature might grant illegitimates another grace period, as they did in the second amendment to La.C.C. art. 209 (Act No. 720 of 1981)[8] and thus the claims which might be asserted by illegitimates could in fact be endless. We find no merit in that argument.
The Legislature granted a second grace period in Act No. 720 of 1981 because of the inadequacies present in the grace period provision of Act No. 549 which, perhaps, threatened the constitutionality of the entire statute. The amendment was not motivated simply by legislative whim and we find nothing to support the argument that another grace period will be enacted. Furthermore, a strong argument can be made that such a provision, granting another grace period for illegitimates to bring a filiation suit, would be invalid. See, Spaht, Establishing the Filiation of Illegitimate Children, 42 La.L.Rev. 403 (1982).
As stated earlier, we were prompted to grant the rehearing by arguments relating to certain aspects of our original opinion.
In our original opinion, we drew a distinction between testate and intestate successions. It was argued on rehearing that such a distinction does not fully rectify the unconstitutional discrimination against illegitimates that has existed. There is, of course, merit in this argument.
Because of the unique nature of Louisiana succession law, which constitutionally requires forced heirship (La.Const. art. XII, § 5), a testator is not free to bequeath all his property to whomever he pleases if he leaves descendants. Descendants have a constitutional, as well as a statutory, right to a forced portion. To deny an illegitimate descendant a forced portion in a testate succession, while affording a legitimate descendant such a right, is as constitutionally impermissible as denying an illegitimate child his right in an intestate succession. There is no basis for making such a distinction and such a holding fosters rather than remedies discrimination against illegitimates.
Again, as stated above, because of La. C.C. art. 209 and La.R.S. 9:5630, the treatment of testate successions in the same manner as intestate successions will not foster a significant amount of litigation. And *599 in any event, an illegitimate descendant who does bring such a claim (in a testate succession) has only an action for a forced portion.
It has also been argued on rehearing that our original determination that Brown should be applied retroactively without limit in intestate successions will seriously prejudice persons who were placed in possession of property many years ago and have relied on their ownership interests in the property to their detriment. Further, it has been argued that such a far reaching retroactive application is not constitutionally required and may very well be constitutionally prohibited. Finding merit in this argument, we likewise renounce that holding.
As pointed out in Justice Dennis' dissent to our original opinion, the constitutionality of La.C.C. art. 919 was expressly upheld by the United States Supreme Court in 1971 in Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). Thus, clearly, prior to the date of that opinion, as well as for a time thereafter, the contrary holding of Succession of Brown was not foreshadowed.[9] Thus the first prong of the Lovell-Chevron test is not met insofar as a retroactive application of Brown prior to 1971 is concerned.
The second and third prongs of the Lovell-Chevron test essentially require a weighing of the purpose and effect of the decision and its furtherance or retardation by retrospective application, against the inequities which may be imposed by retroactive application. Applying Brown only prospectively seriously retards rather than furthers the purpose of the decision, which is to vindicate the constitutional rights of illegitimates, although it fully avoids inequities to those who may be affected by a retroactive application. Conversely, applying Brown retroactively without limit fully vindicates the constitutional rights of the illegitimates, but it gives full sway to potential inequities as concern parties who may have inherited or otherwise acquired property prior to Brown. We thus find that the balance between the vindication and recognition of illegitimates' constitutional rights, on the one hand, and the state's interest in the stability of land titles and preventing prejudice or inequities to gratuitous and onerous acquirers of property, on the other hand, is better struck by a limited retroactive application of the Brown decision to January 1, 1975, the effective date of the new constitution, and no further.
Additionally, as relates to applying Brown retroactively without limit, there is a serious constitutional argument that property rights acquired through inheritance (or otherwise) prior to the opinion in Labine v. Vincent, which specifically upheld the constitutionality of La.C.C. art. 919, vested with the rendition of that opinion in 1971, and that the divesting of those rights is unconstitutional.
A third argument on rehearing which concerned this Court was the potential effect of our original opinion in carving out an exception for "third parties." It was not clear from our original opinion whether only those who acquired by onerous title were included in that appellation or whether some who took by gratuitous title might also be included. It has also been pointed out that the original opinion did not address the problem of whether the illegitimate, who did not have an action against a "third party", would nevertheless have an action against the heir who sold the property, for all or a portion of the proceeds from the sale. These concerns are well taken. Such an exception carved out for "third parties" is likely to foster litigation over the problems noted above and extend rather than settle the disrupting effect on land titles.
*600 Thus, in our judgment, the above discussed concerns regarding our original opinion outweigh other arguments which support an unlimited retroactive application of the Brown decision with exceptions for testate successions and "third parties."
Therefore, after considering all the factors in determining whether Succession of Brown should not be applied retroactively, we find that the balance between all such factors is best struck by a limited retroactive application of the decision to the effective date of the 1974 Louisiana Constitution, January 1, 1975. Although there will be no exception for either third parties or testate successions in our holding, we nonetheless believe that with the statutory limitations imposed by La.C.C. art. 209 and La.R.S. 9:5630 any disruption in land titles which might result will be minor in scope. Thus, on balance and guided by the Lovell-Chevron principles (foreshadowing, resulting retardation of the operation of the rule, inequities, etc.), a limited retroactive application of Succession of Brown to January 1, 1975 is, we determine, the preferable determination.
Were we in this case not to decide the retroactivity issue as we have, there would nevertheless be no plausible support for not applying Succession of Brown retroactively to the date of the rendition of the United States Supreme Court decision in Trimble v. Gordon, supra.
That decision even more than foreshadowed the result in Succession of Brown. It dictated the Brown holding. Trimble did not specifically declare La.C.C. art. 919 unconstitutional, but only because it dealt with an Illinois statute instead of our own. (The two statutes are very similar and only differ in that the Illinois statute designates the specific persons who are entitled to inherit whereas our statute dictates an order of succession. Nevertheless, both discriminate against illegitimate children.) And while Trimble did not expressly overrule Labine v. Vincent, supra (which upheld the constitutionality of La.C.C. art. 919 against an equal protection attack), it effectively did so by overruling the Labine standard of scrutiny and replacing it with a more stringent one.[10]See, Comment, Can Louisiana's Succession Laws Survive in Light of the Supreme Court's Recent Recognition of Illegitimates' Rights, 39 La.L. Rev. 1132 (1979).
Furthermore, no other state of which we are aware, has applied Trimble v. Gordon, in a succession case, from a point later than Trimble's rendition date. Ford v. King, 268 Ark. 128, 594 S.W.2d 227 (1980); Stewart v. Smith, 269 Ark. 363, 601 S.W. 837 (1980); Frakes v. Hunt, 266 Ark. 171, 583 S.W.2d 497 (1979); In Re Rudder's Estate, 78 Ill. App.3d 517, 34 Ill.Dec. 100, 397 N.E.2d 556 (1979); Pendleton v. Pendleton, 560 S.W.2d 538 (Ky.1977); Murray v. Murray, 564 S.W.2d 5 (Ky.1978); Matter of Sharp's Estate, 151 N.J.Super. 579, 377 A.2d 730 (1977); Allen v. Harvey, 568 S.W.2d 829 (Tenn.1978); Winn v. Lackey, 618 S.W.2d 910 (Tex.Civ.App.1981). Therefore, even were we not to find the date of the 1974 Louisiana Constitution controlling, a retroactive application of Brown back to the date Trimble v. Gordon was rendered, would be necessary.
For all the above reasons, we conclude that Succession of Brown's declaration of unconstitutionality of La.C.C. art. 919 is retroactive to January 1, 1975, the effective date of the 1974 Louisiana Constitution.
That being the case, the petition of Dorothy Clivens Vantress, whose father died on September 24, 1971 and as to whom our holding of limited retroactive application of Succession of Brown does not apply, states no cause of action. The rulings of *601 the district court and the Court of Appeal sustaining the exception of no cause of action will therefore be affirmed.

Decree
For the foregoing reasons, our original decree is vacated. We affirm the judgments of the Court of Appeal and the trial court sustaining the exception of no cause of action to Dorothy Clivens Vantress' claim.
ORIGINAL DECREE VACATED; JUDGMENTS OF THE DISTRICT COURT AND THE COURT OF APPEAL AFFIRMED.
DIXON, C.J., dissents.
MARCUS, J., concurs and assigns reasons.
WATSON, J., dissents and will assign reasons.
LEMMON, J., dissents, believing that Succession of Brown should be applied retroactively without any limitation applicable in this case.
MARCUS, Justice (concurring).
I consider that Succession of Brown should only be applied prospectively from September 3, 1980, the date the decision was rendered. Hence, plaintiff's claim in the instant case would be barred. Accordingly, I concur in the result reached in this case.
WATSON, Justice, dissenting.
The original opinion represents the fairest and most equitable resolution of the problems created by Succession of Brown, 388 So.2d 1151 (La.1980).
The majority errs in stating that the original resolution of the retroactivity question in Clivens creates problems which are contrary to the state's interest in quieting or minimizing disruptive land title disputes. Brown, a decision in which the writer dissented, created whatever problems there are. However, after Brown was decided, its only logical extension was to make it retroactive but not effective as to third parties. If there really are formidable problems, the proper remedy is not retroactivity to the effective date of the Louisiana Constitution of 1974, but prospective application from the effective date of the decision in Brown. The majority on rehearing ignores problems in land titles for the period from 1975 to Brown.
The majority overlooks the fact that applying different rules to belated claims of heirship depending on whether the claimants are legitimate or illegitimate constitutes a clear present discrimination against illegitimates contrary to the holding of the United States Supreme Court in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).
While Art. 1, § 3 of the Louisiana Constitution provides that "[n]o law shall arbitrarily, capriciously or unreasonably discriminate against a person because of birth...", it is clear from the transcripts of the convention, quoted in part in footnote 8 of the original opinion, that the constitutional delegates did not intend to grant illegitimates any rights greater than those accorded by the federal jurisprudence at the time.
If an arbitrary line is to be drawn for the retroactive application of Brown, the decision date in Trimble is more appropriate than that of the 1974 Louisiana Constitution. Without the decision in Trimble, Succession of Brown would have been decided otherwise, despite the language of the 1974 Constitution.
I respectfully dissent for these reasons and adhere to the views expressed in the original opinion.
DENNIS, Justice, assigning additional reasons for denying a rehearing.
In our opinion on rehearing, we held that Article I, Section 3 of the Louisiana Constitution of 1974 foreshadowed the United States Supreme Court decision in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). We held that our constitution intentionally went further in our expression of equality for all persons than is explicitly provided in the United States *602 Constitution or in the 1921 Louisiana Constitution.
In so doing, we have partially vindicated the rights of Louisiana Citizens who adopted a constitution in 1974 which was drafted and ratified with the intention of guaranteeing to Louisianians a heightened degree of liberty and protection in certain categories of rights than those recognized under the United States Constitution.
Under our analysis, it is only logical that the effective date of the 1974 Constitution would serve as the date from which application of Succession of Brown, 388 So.2d 1151 (La.1980) would begin, since on that date Article 919 of our Civil Code was automatically repealed, La. Const. Art. 14, §§ 18(B), 35, whereas it had previously been operative and constitutional. Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971).
NOTES
[1] 388 So.2d 1151 (La., 1980). This author dissented.
[2] Since Brown was retroactive as to the litigants, the question is not one of pure prospectivity.
[3] This article has been repealed by Act 1981, No. 919, § 8.
[4] Some states have denied retroactive effect to Trimble. An Arkansas court in Frakes v. Hunt, 266 Ark. 171, 583 S.W.2d 497 (1979) cert. denied 444 U.S. 942, 100 S.Ct. 297, 62 L.Ed.2d 309, refused to apply Trimble v. Gordon retroactively "to prevent chaotic conditions arising from the lack of title to real property", 583 S.W.2d at 499. Cited in Frakes is the Kentucky case of Pendleton v. Pendleton, 560 S.W.2d 538 (1968) which refused to apply Trimble prior to its effective date of April 26, 1977, "except for those specific instances in which the dispositive constitutional issue raised in this case was then in the process of litigation". Also cited is the Tennessee case of Allen v. Harvey, 568 S.W.2d 829 (Tenn., 1978) which allowed illegitimates to inherit only prospectively except for "any cases pending in the courts of Tennessee on the date this opinion is released." Illinois and Texas hold that Trimble does not require retroactive application. In Re Estate of Rudder, 397 N.E.2d 556, 78 Ill.App.3d 517, 34 Ill. Dec. 100 (1979); Winn v. Lackey, 618 S.W.2d 910 (Tex.Civ.App.1981).
[5] "In France ... the retroactivite des nouvelles jurisprudences has been considered as une infirmite du systeme jurisprudentiel." 8 Israel Law Review 173.
[6] "[T]he legislature anticipated that Succession of Brown might be retroactive." 41 La.L.Rev. 387.
[7] Kirchberg v. Feenstra, 609 F.2d 727 (5th Cir. 1979); affirmed 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981) held that LSA-C.C. art. 2404 violated the constitutional guarantee of equal protection. The decision was applied prospectively, save for the litigants, because retroactivity "would create a substantial hardship with respect to property rights and obligations." 609 F.2d 735.
[8] The transcripts of the 1973 Louisiana Constitutional Convention for August 29, reflect that delegate Roy was asked about discrimination on the basis of birth and answered:

"We mention birth because in the past the state has discriminated against legitimate and illegitimate children with respect to aid to dependent children. We felt that we wanted that clearly understood, that in certain categories, whether you're legitimate or illegitimate should not allow state discriminatory practices against you." (Pages 62-63)
Delegate Pugh later noted that:
"I suggest to you that the language relating to birth, to race, to age, to sex, to social origin, to physical condition, to political, religious ideas, has each and everyone been already considered and found to be viable under the Fourteenth Amendment to the Constitution of the United States." (Pages 97-98)
[9] LSA-C.C. art. 203 provides:

"The acknowledgement of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the father and mother or either of them, or it may be made in the registering of the birth or baptism of such child."
[10] Act 549 of 1980 provides:

"To amend and reenact Articles 208 and 209 of the Louisiana Civil Code and to repeal Articles 210 and 212 of the Louisiana Civil Code to provide for proof of filation by illegitimate children, or presumption of filation on their behalf; to provide a procedure and time limitations for proceedings to establish filiation; to provide for the method and standard of proof in such actions; to provide that failure to institute timely such a proceeding shall bar the claims of such persons in the successions of their alleged parents; and to provide otherwise with respect thereto.
"Be it enacted by the Legislature of Louisiana:
"Section 1. Articles 208 and 209 of the Louisiana Civil Code are hereby amended and reenacted to read as follows:
"Art. 208. Authorization to prove filiation. Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their filiation.
"Art. 209. Methods of proving filiation. 1. An illegitimate child may be entitled to a rebuttable presumption of filiation under the provisions of this Article. Or any child may establish filiation, regardless of the circumstances of conception, by a civil proceeding instituted by the child or on his behalf in the parish of his birth, or other proper venue as provided by law, within the time limitation prescribed in this Article.
"2. A child who is shown to be the child of a woman on an original certificate of birth is presumed to be the child of that woman, though the contrary may be shown by a preponderance of the evidence.
"3. An illegitimate child not shown as the child of a woman on an original certificate of birth may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgment in a testament, that he is the illegitimate child of that woman.
"4. A child of a man may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgement in a testament, that he is the child of that man. Evidence that the mother and alleged father were known as living in a state of concubinage and resided as such at the time when the child was conceived creates a rebuttable presumption of filiation between the child and the alleged father.
"5. Proof of filiation must be made by evidence of events, conduct, or other information which occurred during the lifetime of the alleged parent. A civil proceeding to establish filiation must be brought within six months after the death of the alleged parent, or within nineteen years of the illegitimate child's birth, whichever occurs first. If an illegitimate child is born posthumously, a civil proceeding to establish filiation must be instituted within six months of its birth, unless there is a presumption of filiation as set forth in Section 2 above. If no proceeding is timely instituted, the claim of an illegitimate child or on its behalf to rights in the succession of the alleged parent shall be forever barred. The time limitation provided in this Article shall run against all persons, including minors and interdicts.
"Section 2. Articles 210 and 212 of the Louisiana Civil Code are hereby repealed.
"Section 3. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided by Article III, Section 18 of the Louisiana Constitution of 1974.
"Section 4. Any illegitimate child nineteen years of age or older shall have one year from the effective date of this Act to bring a civil proceeding to establish filiation under the provisions of this Act and if no such proceeding is instituted within such time, the claim of such an illegitimate child shall be forever barred."
[11] It is alleged that certain real property has been mortgaged. If so, the mortgage holder is fully protected under this decision.
[1] State of Louisiana, Constitutional Convention of 1973, Verbatim Transcripts (39 Volumes; 1973-1974) at 12 Proceedings (38th day, August 29) 57, 62, 63, 76, 90.
[1] The action brought by Dorothy Clivens Vantress was, more precisely, an intervention in Viola Clivens' succession proceedings, but the exact procedural posture of the case is not pertinent to our consideration of the legal issue.
[2] La.C.C. art. 919, before its repeal in 1981, provided:

Natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the State.
In all other cases, they can only bring an action against their natural father or his heirs for alimony, the amount of which shall be determined, as directed in the title: Of Father and Child
[3] The holding in Brown was however made applicable to the litigants in that case.
[4] State of Louisiana, Constitutional Convention of 1973, Verbatim Transcripts (39 Volumes; 1973-1974) at 12 Proceedings (38th day, August 29) 57, 62, 63, 76, 90.
[5] Neither Succession of Thompson nor Succession of Robins dealt with the same codal article that we dealt with in Succession of Brown, but they did both deal with discrimination against illegitimates.

In Succession of Thompson, we held that La.C.C. art. 1483, which prohibited an acknowledged illegitimate child from being a legatee of his mother if she had other legitimate children, was unconstitutional under La. Const. art. I, § 3.
In Succession of Robins, La.C.C. art. 1488 was held constitutionally infirm under La. Const. art. I, § 3, because it prohibited a natural parent from bequeathing any substantial part of his estate to a child (more than what was necessary for sustenance or to procure an occupation or profession) if the child's conception resulted from the parent's adultery.
[6] The exclusionary rule is essentially a rule that provides for the exclusion from a criminal prosecution of evidence obtained in violation of the Constitution. It was deemed the only effective means of preventing actions by law enforcement personnel which violated one's constitutional rights.
[7] Another fact worth noting, although not dispositive, is that knowledgeable attorneys handling successions have been alert to the possible rights of non-legitimates, and have, accordingly, required that affidavits of death and heirship in successions exclude the existence of non-legitimate children. Chiefly, they were alerted by the 1959 decision of this Court in Henry v. Jean, 238 La. 314, 115 So.2d 363 (1959). That case dealt with a 1944 amendment to La.C.C. art. 198, which provided an additional method of legitimating children, and its effect on a child's status as related to heirship. The amendment provided that a child could be legitimated by the subsequent marriage of his parents whenever the child had been either formally or informally acknowledged by them. Prior to the amendment a child could only be legitimated if formally acknowledged either before the subsequent marriage of his parents or in the marriage contract itself. The facts in the case involved a situation where the parents had married in 1900. The father had died in 1939 and the mother died after the 1944 amendment, in 1949. The illegitimate child was successful in arguing that he was legitimated by the 1944 amendment to La.C.C. art. 198, notwithstanding that his father had died prior to the amendment, and was entitled to share in his mother's succession as a legitimated child.
[8] La.C.C. art. 209 was originally amended in 1980 by Act No. 549. The main provisions of the act were essentially the same as those of Act No. 720, with the exception that the illegitimate was given only six months after the death of the alleged parent to bring his filiation action instead of one year as provided in Act No. 720. However the grace period provided in Act No. 549 was substantially different from the one provided in Act No. 720 and provided:

Any illegitimate child nineteen years of age or older shall have one year from the effective date of this Act to bring a civil proceeding to establish filiation under the provisions of this Act and if no such proceeding is instituted within such time, the claim of such an illegitimate shall be forever barred.
As is apparent, the meaning of the provision is not clear. It has been argued that the provision only extends a grace period to those over nineteen whose alleged parent is still living. On the other hand, from a literal reading of the provision, it also extends the one year grace period to illegitimates over nineteen regardless of when their alleged parent died. Obviously, there is no rational reason for allowing an illegitimate over nineteen whose alleged parent died ten years ago, one year to bring an action, and to deny the one year period to an illegitimate who is under nineteen and whose alleged parent may have died only one year ago.
Therefore, because of the ambiguities in the provision, the Legislature granted another one year grace period in Act No. 720 of 1981, granting the grace period to all illegitimates adversely affected by the Act.
[9] While it has been argued that Labine v. Vincent, supra, was incorrect, it was nonetheless a decision of the United States Supreme Court, interpreting the United States Constitution's equal protection clause. Labine v. Vincent had the force of law. It should be noted also that even when the Court rendered what has been viewed as a contrary decision in Trimble v. Gordon, supra, it expressly did not overrule Labine v. Vincent. Thus, although perhaps an erroneous decision, Labine v. Vincent was a binding one.
[10] Applying Succession of Brown retroactively at least to April 26, 1977, the date of the rendition of Trimble v. Gordon, surely would come as no surprise to anyone. In the October 1977 issue of The Louisiana Estate Planner, Professor Gerald LeVan, while noting that Succession of Robins and the 1974 Louisiana Constitutional provision may well "point the way" for the Louisiana Supreme Court's setting the effective date for the application of Trimble v. Gordon, observed that the effective date for applying Trimble "could be no earlier than April 26, 1977, the date Trimble was decided."